## Case No. 5,325.

### In re GEORGE et al.

### [1 Lowell, 409.] [1]

### District Court, D. Massachusetts. 1869.

BANKRUPTCY—OBJECTIONS TO DISCHARGE — PREFERENCES—BOOKS OF ACCOUNT.

1. When objections are filed to the discharge of partners who are bankrupts, the trial may be joint, but the verdicts and decrees must be several.

[Cited in Re Holst, 11 Fed. 857.]

2. A preference is committed when a trader, knowing or suspecting that he is insolvent and must stop payment, pays or secures one creditor or a few creditors in full, thus giving him or them an intended advantage over the rest.

[Cited in Alderdice v. State Bank of Virginia, Case No. 154.]

3. The failure to keep proper books of account will prevent the discharge of both part-

---

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

ners, though the fault may be wholly that of one of them.

[Cited in Re Frey, 9 Fed. 384; Re Graves, 24 Fed. 554.]

[Cited in Re Howard, 59 Vt. 595, 10 Atl. 716.]

4. Any of the acts which are made misdemeanors by section 44 of the bankrupt law [of 1867 (14 Stat. 539)] may be set up and proved in opposition to the discharge of a bankrupt, though he has never been tried criminally for the misdemeanor.

[In bankruptcy. In the matter of J. H. George and G. G. Proctor.]

Issues of fact tried by jury on objections to the bankrupts' discharge.

F. J. Lippitt, for objecting creditors.

E. Avery & G. M. Hobbs, for bankrupts.

LOWELL, District Judge (charging jury). The bankrupt law has two prominent features. 1. That the property of insolvent persons should be distributed proportionally among all their creditors, with the exception of a few debts of a privileged character, such as taxes, and wages to a reasonable amount. 2. That a debtor who has behaved fairly by all his creditors should be forever discharged from his obligations. These bankrupts were partners in trade, and their case, therefore, passes through the bankrupt court as one case, much to the convenience of all persons interested; but when it arrives at this stage, it becomes, in reality, two cases, and you are to consider the petition of each partner for a discharge and the objections made to it, severally. Each bankrupt must stand or fall by his own acts; those of his co-partner, committed without his knowledge, will not affect him, excepting that a neglect to do what the law positively requires, such as keeping proper books, will affect both, though it should actually be the neglect of one only.

These bankrupts, having submitted themselves to examination, and having complied with all the forms of the law, apply now for their discharge. Any creditor who has a provable debt is entitled to oppose the application, and is bound to specify the grounds of his opposition. When these creditors, representing, as it appears, a considerable number, and in truth, necessarily representing all the creditors, have made such specific charges, issues of fact and law are thereby made, and the court has power—and I usually exercise it on the seasonable request of either party—to order the questions of fact to be tried by a jury. In such a trial the creditors stand like plaintiffs in an action, and are bound to make out the specific charges, or some one of them, by the preponderance of the evidence, a burden which is perhaps sufficiently compensated by the right to open and close the case. For convenience I shall call these creditors plaintiffs and the bankrupts defendants. You will therefore consider these specifications in their separate application to each defendant, and, by the consent of the parties, you will

also make separate findings on the several specifications.

The charges numbered one and two—the third having been waived—relate to preferences said to have been given by the defendants to a pre-existing creditor. These charges do not, perhaps, contain any imputation of moral turpitude. It has been the usage in many well-ordered mercantile communities for persons in failing circumstances to pay such of their creditors in full as they chose to pay, and neither the common law nor any statute or rule in equity has forbidden it. In this commonwealth such conduct has been illegal ever since our insolvent law was passed in 1838 [Insolvent Laws Mass. p. 13, c. 163]; and it has come to be a part of our mercantile morality that such advantages should not be given to favored creditors; but the practice has been different in many other parts of the country. A preference is now made a statute fraud throughout the United States, and a fraudulent preference is a bar to the discharge of the debtor. A debtor gives a preference when, knowing, believing, or suspecting that he cannot pay all his creditors in full, he chooses to pay or secure one, and thus to give him an intended advantage over the rest. The first inquiry, then, is, whether the payments here alleged were made; if so, whether the defendants were insolvent at the time; and, lastly, whether they made the payments with the intent charged. If you find the knowledge of insolvency, and an expectation or fear of stopping payment, you must infer the intent, because every sane person is presumed to intend the well-known consequences of his acts, just as you infer, if a person passes a counterfeit coin as good, knowing it to be counterfeit, that he intended to defraud the person to whom he passed it. The intent with which an act is done is not, ordinarily, a matter of direct evidence, but of inference from the act and the surrounding circumstances. If you see a person eating, you infer that he is hungry; and so throughout the whole domain of human conduct. The plaintiffs argue to you that the actual insolvency of the defendants, at the dates of the payments charged, is clearly shown by their books of account. They say that there were, at that very time, considerable debts overdue, so that the defendants had in fact stopped payment a day or two before; and further, that the acts of the defendants, and the state of their affairs as shown by the schedule prepared by one of them two days after the last alleged preference, clearly prove not only the fact, but also their own knowledge of the state of their affairs; and you will recollect what was urged on the other side. One remark only is necessary on this point. It has been zealously insisted, on the one side, that the payments were made out of the usual course of business; that one of the debts was not due, and that the others were not called for,—being loans on call. All these matters of fact you will decide; but one argument seemed to as-

sume.that a payment in the ordinary course of business could not be a preference; and the other, that one not so made must be a preference. Neither is absolutely true as a proposition of law. The fact may be, and no doubt usually is, very important in the view of the jury; but it is only as evidence of intent. Some payments might be preferences, though made in what seemed to be the ordinary course, and others might not be, though made out of it. It is a question of intent in each case. Under a part of section 35 of the statute, relating to certain frauds other than preferences, and not relied on in this case, the fact that a conveyance was made out of the ordinary course of business of the bankrupt is declared to be prima facie evidence of fraud. Even under that clause it would still be a question for the jury whether the intent of the conveyance was fraudulent. In this case all the circumstances are for the consideration of the jury on the question of intent.

The next two specifications are founded on section 44 of the statute, and for the purposes of the trial I rule that if the acts and intents therein alleged are proved, the defendants cannot be discharged, although the same acts are by the law made a misdemeanor, and these defendants have never been tried criminally for the misdemeanor. The fourth specification is that the defendants, being insolvent, did, under the false color and pretence of carrying on their trade, obtain certain goods on credit, with intent to defraud their creditors by selling the goods at once for cash, in order to raise funds for making certain preferences, being the same preferences before set forth; and the fifth is, that they disposed of, otherwise than by bona fide transactions in the ordinary way of their trade, certain goods which they had bought on credit, &c. The goods are fully described in each case, and both frauds are said to have been committed within three months before the petition in bankruptcy was filed. No objection was taken that these specifications do not allege the acts to have been done in contemplation of bankruptcy, which I am inclined to think is a necessary allegation, because congress has no criminal jurisdiction of acts or dealings between debtor and creditor, generally speaking, but only as relating to some matter like bankruptcy, or a patent-right, &c., which is put under their control by the constitution. As this point was not taken, and as the defect might be readily amended, you will consider these specifications on their merits. Under the fourth, it must be proved that some false statement of the kind alleged was made, either by word or act; and under the fifth, that the sales were made out of the ordinary course of the trade of the defendants, besides the other facts of preference necessary to be shown under the first and second specifications, and which are alleged in the fourth and fifth as part of the intent.

The sixth and last specification must be decided for or against both defendants alike, because the fact and not the intent, is the essential thing. The allegation is that the defendants did not keep proper books of account. This is a most important part of the law, because it is that which is intended to provide the assignee representing the creditors with the means of tracing out all the dealings of the debtors, to ascertain what has become of their property, what are the causes of their failure, and whether they have dealt fairly and equally with their creditors. However harshly the law may sometimes operate with some small traders, whose affairs seem hardly worthy of the trouble of recording them, it is a most reasonable and salutary rule in its application to merchants dealing with large sums and contracting large debts, and in a position to know and to be able to carry out the law. It is a question of fact whether the books are such as will give to a competent person examining them knowledge of the true state of the merchant's affairs. There is no positive rule of law requiring the entries to be made daily (though they ought to be at or near the time of the transactions), or the balances to be made at any fixed periods, or the books to be kept in any particular mode. The question is addressed to the good sense and knowledge of the jury, aided by such explanations as may be offered by experts or other competent witnesses, whether the books before them are sufficient and properly kept. You will recall the particulars in which the plaintiffs say these books are deficient, and the evidence and arguments upon these points on either side, and I need not repeat them. If the books were imperfectly or improperly kept in any of these particulars, both bankrupts must lose their discharge, because it is a condition annexed by congress to such a discharge in the case of merchants that their books shall have been properly kept, subsequently to the passage of this act, and no excuse however true, and no innocence of intention will avail to supply the deficiency.

The jury found both bankrupts guilty of charges 1. 2, and 6, and not guilty of the others. Discharge refused.

[See Case No. 5,326.]