**SERVICE GROUP INCORPORATED, a Pennsylvania Corporation, et al., Plaintiffs,**

**v.**

**ESSEX INTERNATIONAL, INC., a Delaware Corporation, Defendant.**

Civ. A. No. 76–312.

United States District Court,
D. Delaware.

April 1, 1977.

John T. Owens, of Walsh, Monzack & Owens, Wilmington, Del., for plaintiffs.

Edmund N. Carpenter, II, of Richards, Layton & Finger, Wilmington, Del., for defendant.

## OPINION

STEEL, Senior District Judge:

In 1972, pursuant to written contract, the corporate plaintiff, Service Group, Inc. ("SGI"), purchased from the defendant, Essex International, Inc. ("Essex"), as a going concern, the assets and property of Fetter Brothers, Inc., a division of Essex. By its present action SGI and certain of its officers and stockholders have tendered to de-

fendant all of the assets which SGI acquired from Essex for reasons stated below. The complaint prays to have the status quo ante restored, or alternatively for damages.[1]

In seeking a restoration of the status quo ante plaintiffs pray for: (a) cancellation of the note of $505,955 which SGI gave Essex as part of the purchase price of the business, (b) an order directing Essex to refund to plaintiffs the sum of $281,500 plus interest which plaintiffs allege that they supplied in connection with the transaction, and (c) compensation in the amount of $128,000 plus interest each for both A. Richard Schaum and Robert G. Vaughan, III, individual plaintiffs, for the additional time which they allege they were required to expend in connection with the operation of the business as a result of the omissions, misstatements, wrongful acts, and inaccuracies of the defendant.

The alternative relief of damages which plaintiffs pray for also alleges that as an element of the two items of $128,000 plus interest last mentioned and also the sum of $980,000 plus interest which plaintiffs allege represents the amount by which Essex overstated profits through its misrepresentations, omissions and inaccuracies.

The complaint contains four counts, each of which alleges the same facts but purports to embody a different theory upon which plaintiffs claim they are entitled to the precise alternative relief prayed for. Count I alleges that the demand note of $505,955 which SGI gave to Essex as part payment for its business was a "security" which SGI "sold" to Essex, that it was obtained by Essex as a result of its misrepresentations and omissions of material facts, and hence in violation of section 10(b) of the Securities Exchange Act of 1934 (the Securities Act) and Rule 10b–5 thereunder. Count II alleges Essex sold its business to SGI by means of common law fraud and deceit. Count III charges Essex with having breached implied and specific warranties in the contract of sale. Count IV is based upon the negligence of Essex.[2]

Jurisdiction is based upon section 27 of the Securities Act, pendent jurisdiction, and also diversity of citizenship.

Plaintiffs have demanded a jury trial "on all issues susceptible of trial by jury". Defendant has moved to strike the demand upon the ground that under Article VII of the Constitution and laws of the United States plaintiffs have no right to a jury trial. Article VII provides with respect to the availability of juries in civil cases that:

"In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . .."

Rule 38(a) of the Federal Rules of Civil Procedure provides that:

"The right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by statute of the United States shall be preserved to the parties inviolate."

The defendant argues that the plaintiffs' action sounds in equity since they are primarily seeking cancellation of a promissory note and that their additional claims for damages are simply incidental or alternatives to their prayer for cancellation. For this reason defendant argues the suit is not one triable by jury and that plaintiffs' claims should be decided by a Court sitting in its equity capacity.

These arguments must be rejected in view of the Supreme Court's decisions in *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959) and *Dairy Queen v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962), which substantially expand the right to a jury trial.

*Beacon Theatres* recognizes that since the merger of law and equity accomplished by the Federal Rules of Civil Procedure in the year 1938, claims which historically would

---

1. The Federal Rules of Civil Procedure permit relief in the alternative to be demanded, Rule 8(a).

2. The Federal Rules of Civil Procedure permit the pleading of separate claims regardless of consistency, Rule 8(e)(2).

not have been tried by a jury because, for instance, they arose in an equitable proceeding, now, in proper circumstances, may be.

In *Beacon Theatres* the Court reasoned that "the justification for equity's deciding legal issues once it obtains jurisdiction, and refusing to dismiss a case, merely because subsequently a legal remedy becomes available, must be re-evaluated in the light of the liberal joinder provisions of the Federal Rules which allow legal and equitable causes to be brought and resolved in one civil action". 359 U.S. at 509, 79 S.Ct. at 956. Thus the Court held that the right to a jury trial on a legal claim is not defeated merely because the suit was begun as an equitable proceeding.[3] The rule to be derived is that as long as any legal cause is involved, the jury rights it creates control. *Thermo-Stitch, Inc. v. Chemi-Cord Processing Corp.*, 294 F.2d 486, 491 (5th Cir. 1961).

In *Dairy Queen, supra*, the Court reaffirmed its rationale in *Beacon Theatres. Dairy Queen* was a suit in which the plaintiffs, owners of the trademark Dairy Queen, had granted an exclusive license to the defendant to use the trademark and to grant use of franchises to others. The consideration for the license consisted of a small initial payment by defendant and in addition defendant's agreement to pay plaintiffs fifty per cent of the amount which it received on sales and franchises. Claiming that the defendant had committed a material breach of the license by defaulting in its payments, plaintiffs notified the defendant of the termination of the license and the cancellation of its right to use the trademark unless the claimed default was remedied immediately. When the default was not cured plaintiffs sued. The complaint prayed for (a) temporary and perma-

nent injunctions to restrain the defendant from any further use of or dealing in the franchise and the trademark, (b) an accounting to determine the exact amount of money which the defendant owed to plaintiffs and a judgment for that amount, and (c) an injunction pending the accounting to prevent the defendant from collecting any money from Dairy Queen stores in the territory. Defendant's answer denied that there had been a breach of contract, alleged laches and estoppel as a bar to plaintiffs' action, and violations by plaintiffs of the anti-trust laws in their dealings with the trademark. The answer demanded a jury trial which the District Court denied. The Court of Appeals refused to mandamus the district judge to grant a jury trial. On appeal the Supreme Court reversed the Court of Appeals and held that legal issues existed which the District Court should try to the jury before it determined the equitable claims. At p. 477 of 369 U.S., at p. 899 of 82 S.Ct. the Court said:

". . . [plaintiffs'] claim for a money judgment is a claim wholly legal in its nature however the complaint is construed. As an action on a debt allegedly due under a contract, it would be difficult to conceive of an action of a more traditionally legal character. And as an action for damages based upon a charge of trademark infringement, it would be no less subject to cognizance by a court of law."

The Court concluded at p. 479, 82 S.Ct. at p. 900:

". . . that the district judge erred in refusing to grant petitioner's demand for a trial by jury on the factual issues related to the question of whether there has been a breach of contract. Since these issues are common with those upon which

3. *Beacon Theatres* was basically a case where plaintiff, who by means of contracts with movie distributors held an exclusive right to exhibit "first run" pictures, brought a suit in equity styled a "Complaint for Declaratory Relief" against defendant seeking a declaration that its exclusive rights were reasonable and not in violation of the anti-trust laws. Defendant counterclaimed alleging violation of the anti-trust laws, asked for treble damages, and as-

serted a right to a jury trial. The District Court ruled that the complaint was essentially equitable in nature and directed that the issues raised by it be tried to the Court prior to a trial of the counter-claim to a jury. Following affirmance by the Court of Appeals, the Supreme Court reversed and held that where the counter-claim raised legal issues common to both the complaint and the counter-claim, these issues must be determined by a jury.

respondents' claim to equitable relief is based, the legal claims involved in the action must be determined prior to any final court determination of respondents' equitable claims."

See the discussion of this problem by the three judge panel in *National Life Insurance Co. v. Silverman*, 147 U.S.App.D.C. 56, 454 F.2d 899 (1971) and by the *per curiam* decision of the Court en banc at 454 F.2d at 917, which reversed one aspect of the decision of the panel. Compare, *General Tire & Rubber Co. v. Watson-Bowman Associates*, 74 F.R.D. 139 (D.Del.1977), and *Marshall v. Electric Hose & Rubber Co.*, 413 F.Supp. 663 (D.Del.1976).

*Beacon Theatres* and *Dairy Queen* establish conclusively that where a party asserts timely the right to a jury trial in an action which even in part involves a claim for monetary relief on an essentially legal issue, a jury trial must be had regardless of whether it is otherwise an equitable proceeding or merely "incidental" to an equitable right or remedy.[4]

As a result, in the present case, only the question whether the relief claimed by plaintiffs involves issues which are essentially legal need be considered. Without question they do.

The alternative prayers for damages under Counts II, III and IV rest upon causes of action which are historically legal. They must be tried to the jury prior to any resolution by the Court of the availability of equitable relief. *Dairy Queen v. Wood, supra,* 369 U.S. at 479, 82 S.Ct. 894. It is likewise appropriate to initially try to the jury the damage claim under Count I based upon defendant's alleged violation of section 10(b) of the Securities Act. *Dasho v. Susquehanna Corporation*, 461 F.2d 11, 24 (7th Cir. 1972), *cert. denied,* 408 U.S. 925, 92 S.Ct. 2496, 33 L.Ed.2d 336 (1972). Furthermore, plaintiffs have a right to try to the jury their claims for damages in connection with their alternative prayer for a restoration of the status quo ante, *Myzel v. Fields,*

386 F.2d 718 (8th Cir. 1967), *cert. denied,* 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 (1968).

The motion of the defendant to strike plaintiffs' demand for a jury trial will be denied.

---

**4.** The principles enunciated by the Supreme Court in *Beacon Theatres* and *Dairy Queen* have been confirmed by that Court in *Ross v.*

*Bernhard,* 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970) and *Curtis v. Loether,* 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974).