**In re Buddy Lebron BANDY, Melinda Jane Bandy, Debtors.**

**Jeremy R. Smith and Roland E. Smith, Plaintiff,**

**v.**

**Buddy Lebron Bandy, Defendant.**

**In re Bridget R. Garrison, aka Bridget Bandy, Debtor.**

**Jeremy R. Smith and Roland E. Smith, Plaintiff,**

**v.**

**Bridget R. Garrison, Defendant.**

**Bankruptcy Nos. 98–12626, 98–13789. Adversary Nos. 98–1107, 98–1137.**

United States Bankruptcy Court, E.D. Tennessee, Southern Division.

Aug. 19, 1999.

William G. Schwall, Chattanooga, Tennessee, for plaintiffs.

Joseph E. Willard, Jr., Rossville, Georgia, for defendant, Buddy Lebron Bandy.

Lorraine Raymond, Chattanooga, Tennessee, for defendant, Bridget R. Garrison, aka Bridget Bandy.

## MEMORANDUM

R. THOMAS STINNETT, Bankruptcy Judge.

These two adversary proceedings arise from the same transaction between the plaintiffs and the defendants—the purchase and sale of a ten year old Jeep Cherokee. The plaintiffs allege that the defendants convinced them to buy the Jeep by intentionally misrepresenting its condition. The complaint asks for damages and a decision that the debt is non-dischargeable in either defendant's bankruptcy case.

The plaintiffs have requested a jury trial, and the defendants have objected. The question now before the court is whether the plaintiffs are entitled to a jury trial on any of the issues. The court finds the facts as follows.

Buddy Lebron Bandy filed his Chapter 7 bankruptcy case on May 13, 1998. The clerk's office sent out a no-asset notice informing unsecured creditors that they need not file proofs of their claims because it appeared there would be no dividend. *Fed.R.Bankr.P.* 2002(e). Mr. Bandy's bankruptcy case proceeded as a no-asset case. The bankruptcy trustee filed a report of abandonment and no distribution.

The notice also set the last date for filing a complaint to except a debt from discharge under Bankruptcy Code § 523(a)(2), (4), (6) or (15). 11 U.S.C. § 523(c); *Fed.R.Bankr.P.* 2002(f)(5) & 4007(c). Jeremy and Roland Smith filed a timely complaint against Mr. Bandy to except the alleged debt from discharge. The original complaint relied on Bankruptcy Code § 523(a)(6). The Smiths subsequently amended the complaint to add § 523(a)(4) and § 523(a)(2) as statutory grounds for excepting the alleged debt from discharge.

Ms. Garrison filed her Chapter 7 bankruptcy case on July 13, 1998. The Smiths filed a timely complaint against Ms. Garrison under Bankruptcy Code § 523(a)(4) and (6). The complaint has been amended to add § 523(a)(2)(A) as a ground for excepting the debt from discharge. The complaint alleges that Ms. Garrison also took part in convincing the plaintiffs to buy the Jeep by intentionally misrepresenting its condition. Ms. Garrison's case has also progressed as a no-asset case.

Section 523(a)(6) excepts from discharge a debt for willful and malicious injury by the debtor to another entity or the property of another entity. 11 U.S.C. § 523(a)(6). Section 523(a)(4) excepts three kinds of debts from discharge: (1) a debt for fraud or defalcation while acting in a fiduciary capacity, (2) a debt for embezzlement, or (3) a debt for larceny. 11 U.S.C. § 523(a)(4). Section 523(a)(2)(A) excepts from discharge a debt for obtaining money or property by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's financial condition. 11 U.S.C. § 523(a)(2). 11 U.S.C. § 523(a)(2)(A). Section 523(a)(2)(B) deals with debts for obtaining money, property or credit by use of a false financial statement.

The court's ruling on the plaintiffs' motion to amend the complaint in Mr. Bandy's cases reveals that § 523(a)(2)(A) is the most relevant of these provisions. The complaint alleges the debtors obtained the plaintiffs' money, the price of the Jeep, by making false statements regarding the Jeep's condition.

■ The timely filing of a complaint under § 523(a)(2), (4), (6) or (15) does not prevent the entry of a discharge. The court can grant the discharge and subsequently declare that a particular debt was not discharged under one of those provisions. 11 U.S.C. § 524(a); *Fed. R.Bankr.P. 4004(c)*. The court has entered a discharge in both cases.

## DISCUSSION

■ The wording of the seventh amendment gives rise to the first step in deciding whether the plaintiffs have the right to a jury trial. The amendment preserves the

right to a jury trial in "suits at common law." U.S. Const. amend. VII. This carried over into American law the distinction that existed in the English courts when the amendment was ratified in 1791: the right to a jury trial existed in legal proceedings (suits at common law) but not in equitable proceedings. *Granfinanciera v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989).

▬ Changes in the law made it difficult for the courts to determine whether a proceeding would have been legal or equitable in the English courts of the late 18th century. In a series of cases starting about 40 years ago, the Supreme Court changed the focus to some extent. When a proceeding involves a mixture of legal and equitable claims, the question is not the character of the entire proceeding as legal or equitable, but the character of particular issues as legal or equitable. Furthermore, the court must consider developments in the law and procedure since adoption of the seventh amendment because they may have provided an adequate legal remedy that was not available in the law courts of England during the late 18th century. 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure 2d* §§ 2302 & 2302.1 (1995).

▬ Pursuant to this standard, a party will usually be entitled to a jury trial when the proceeding involves a mixture of legal and equitable actions and remedies. *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959). The court can not deny a jury trial on the basis that the proceeding is predominantly equitable. Likewise, the court can not deny a jury trial of the legal issues on the ground that they are merely incidental to the equitable issues. *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962).

▬ The court follows a two step process for deciding whether issues are legal or equitable. First, the court compares the action to those brought in the English courts in the late 18th century; the purpose is to determine whether the action would have been legal or equitable. Second, the court considers the remedy requested to determine whether it is legal or equitable. *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 41–42, 109 S.Ct. 2782, 2790, 106 L.Ed.2d 26 (1989).

In this proceeding the plaintiffs seek two kinds of relief. They seek a decision as to (1) liability and (2) dischargeability. Are the defendants liable to the plaintiffs for damages resulting from fraud in the sale of the car? If they are liable, is the debt for damages excepted from discharge?

▬ Whether a lawsuit based on fraud would have been at law or in equity under the English system depended primarily on the remedy requested. Damages are a legal remedy, and a suit to recover damages based on fraud is an action at law, not a suit in equity. *Compare Bradshaw v. Thompson,* 454 F.2d 75 (6th Cir.1972) *and Hyde Properties v. McCoy,* 507 F.2d 301 (6th Cir.1974); *see also Service Group Inc. v. Essex International Inc.,* 74 F.R.D. 379 (D.Del.1977); *Stalford v. Blue Mack Transport, Inc. (In re Lands End Leasing, Inc.),* 193 B.R. 426 (Bankr.D.N.J. 1996); *Unsecured Creditors' Committee v. Banque Paribas (In re Heartland Chemicals, Inc.),* 103 B.R. 1018 (Bankr.C.D.Ill. 1989).

If there were no bankruptcy, and this were simply a suit in federal district court, the plaintiffs would be entitled to a jury trial on the liability issues because they are legal issues. The question is whether the plaintiffs have the right to a jury trial when the liability issues arise in the context of a bankruptcy proceeding to determine dischargeability of the debt.

The courts generally agree that dischargeability proceedings are equitable, and as a result, the parties do not have the right to a jury trial. *See, e.g., N.I.S. Corp. v. Hallahan (In re Hallahan),* 936 F.2d 1496 (7th Cir.1991); *American Express*

*Travel Related Services Co. v. Hashemi (In re Hashemi)*, 104 F.3d 1122 (9th Cir. 1996) *cert. den.* 520 U.S. 1230, 117 S.Ct. 1824, 137 L.Ed.2d 1031 (1997); *Webb v. White (In re White)*, 222 B.R. 831 (Bankr. W.D.Tenn.1998); *Union Bank v. Leigh (In re Leigh)*, 165 B.R. 203 (Bankr.N.D.Ill. 1993); *Berryman v. Smith (In re Smith)*, 84 B.R. 175 (Bankr.D.Ariz.1988). The reasoning seems to be that all the issues are equitable even though the liability issues, if separated from the question of dischargeability, would be legal issues.

This result can be questioned in light of the Supreme Court's reasoning in *Ross v. Bernhard*, 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970). *Ross v. Bernhard* was a derivative suit brought by stockholders on behalf of a corporation. If the corporation had brought suit, the question of liability would have raised legal issues for which there was a right to a jury trial. Derivative suits were viewed as entirely equitable because equity gave the stockholders standing to sue. The Supreme Court held the stockholders still had the right to a jury trial on the liability issues. This suggests that the plaintiffs in this proceeding are entitled to a jury trial on the underlying question of liability for damages arising from fraud.

*Ross v. Bernhard* can be distinguished on the ground that the derivative action was essentially a suit by the corporation to recover damages. Equity was involved only because it provided the stockholders' the right to sue on behalf of the corporation. In this proceeding, the equitable remedy of declaring the debt to be nondischargeable does not merely provide the plaintiffs standing to sue. It is the key remedy the plaintiffs must have in order to prevail on the merits.

■ Moreover, the nature of an issue as legal or equitable still depends on the nature of the proceeding in which it arises. The Supreme Court's decision in *Katchen v. Landy* illustrates that issues which are usually legal issues may be equitable issues in the context of a particular bankruptcy proceeding. *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966).

In *Katchen* the bankruptcy trustee filed an objection to the creditor's claim. A bankruptcy statute provided for disallowance of a claim if the creditor had received preferential transfers and had not returned them to the bankruptcy estate. The trustee sought not just disallowance of the claim but a judgment for the amount of the preferential transfers. In other words, the trustee sought the same relief as if he had filed a suit to recover the preferential transfers. The lower courts denied the creditor a jury trial. The Supreme Court began with the proposition that the creditor would be entitled to a jury trial in a suit by the trustee to recover the amount of the preferential transfers. Nevertheless, the Supreme Court upheld the lower courts' decision that the creditor was not entitled to a jury trial. The Supreme Court reasoned that the process of allowing and disallowing claims against an insolvent estate is equitable. The issues were equitable issues because they arose in the claims allowance process, which was equitable. Because the creditor had filed a proof of claim, the request to recover the preferential transfers was part of the equitable process of allowing or disallowing claims, and as a result, the creditor had no right to a jury trial. *Katchen v. Landy*, 86 S.Ct. 467.

The Supreme Court doubted the relevance of its earlier decisions in *Beacon Theatres* and *Dairy Queen*. *Katchen*, 86 S.Ct. 467, 477. This doubt apparently was based on the conclusion that the proceeding was equitable under the historical test for determining the right to a jury trial. Thus, all the issues were equitable issues even though the preference issues would have been legal issues if the creditor had not filed a proof of claim. The bankruptcy context in which the preference issues arose made them equitable issues.

The question is whether the same reasoning applies to this proceeding. Are the liability issues equitable issues because they arise in the context of a proceeding to determine dischargeability? History provides some guidance on this question, in particular the history of dischargeability proceedings under the Bankruptcy Act of 1898 (the Bankruptcy Act).

Until the 1970 amendments, the Bankruptcy Act did not give the bankruptcy courts general jurisdiction to determine the dischargeability of a particular debt. A creditor could sue the debtor to collect the debt after the bankruptcy. The suit was usually brought in state court. The debtor could assert the discharge as a defense, and the state court would decide whether the debt was discharged or was within one of the exceptions. 1A James W. Moore & Lawrence P. King, *Collier on Bankruptcy* ¶ 17.28 at 1725–1729 (14th ed.1988).

This procedure caused problems for debtors. They were often unable to afford a defense and ended up losing by default and being required to pay a debt that may have been discharged. Unscrupulous creditors could count on the debtor's inability to defend, or they could fake service of process so that the debtor did not have the opportunity to defend. 1A James W. Moore & Lawrence P. King, *Collier on Bankruptcy* ¶ 17.28A at 1735–1737 (14th ed.1988).

A possible remedy was to give the bankruptcy courts jurisdiction to determine dischargeability, but a stumbling block was the concern that giving jurisdiction to the bankruptcy courts would deprive the parties of the right to a jury trial on the liability issues.[1] In state court the parties would often have the right to a jury trial on the liability issues and the facts as to liability and dischargeability would over-

lap. As a result, the state court jury would determine the facts as to both liability and dischargeability. Congress hesitated to give the bankruptcy courts jurisdiction of dischargeability disputes because Congress believed the parties would have no right to a jury trial in bankruptcy court on any of the issues. 1A James W. Moore & Lawrence P. King, *Collier on Bankruptcy* ¶ 17.28A[6] at 1742.5–1742.7 (14th ed.1988).

Why was Congress concerned that there would be no right to a jury trial in bankruptcy court? The answer to this question requires some explanation of jurisdiction under the Bankruptcy Act. Two categories of jurisdiction (or two categories of proceedings) existed under the Bankruptcy Act—summary and plenary. 2 James W. Moore & Lawrence P. King, *Collier on Bankruptcy* ¶ 23.02 (14th ed.1988).

Disputes within the court's summary jurisdiction generally arose out of the basic steps in the administration of the bankruptcy case. Summary jurisdiction applied primarily to disputes concerning property in the court's actual or constructive possession, but it also included other matters in the administration of the case, such as whether or not to grant a discharge. 1 James W. Moore & Lawrence P. King, *Collier on Bankruptcy* ¶ 2.06 (14th ed.1988). Summary jurisdiction was generally exercised by the referee in bankruptcy, the forerunner to the bankruptcy judge under current law. *Morrison v. Rocco Ferrera & Co.*, 554 F.2d 290 (6th Cir.1977); *Tamasha Town and Country Club v. McAlester Construction Finance Corp.*, 252 F.Supp. 80 (S.D.Cal.1966); 11 U.S.C. §§ 1(26) (1978); *Bankruptcy Rule* 102 (1978).[2] The bankruptcy judges exercised summary jurisdiction as courts of equity. In other words, a dispute within the court's summary jurisdiction was dealt

---

1. The bankruptcy court was the district court and the referee or bankruptcy judge. 11 U.S.C. § 1(9) & (10) (1978); 1 James W. Moore & Lawrence P. King, *Collier on Bankruptcy* ¶ 2.06 (14th ed.1988).

2. The Bankruptcy Rules that took effect in 1973 superseded provisions of the Bankruptcy Act. 1 James W. Moore & Lawrence P. King, *Collier on Bankruptcy* ¶ 0.10 (14th ed.1988).

with as an equitable proceeding; there was no right to jury trial under the seventh amendment. S. Elizabeth Gibson, *Jury Trials in Bankruptcy: Obeying the Commands of Article III and the Seventh Amendment,* 72 Minn.L.Rev. 967, 1010 – 1014 (1988).

On the other hand, plenary proceedings were ordinary suits at law or equitable actions brought on behalf of the bankruptcy estate or against it. They were heard by the district judge or in the state courts. 2 James W. Moore & Lawrence P. King, *Collier on Bankruptcy* ¶ 23.04 (14th ed.1988). The seventh amendment governed whether a party to a plenary proceeding in federal court had the right to a jury trial.

Congress obviously thought that dischargeability proceedings—including liability issues—could be put within the bankruptcy court's summary jurisdiction. Indeed, the 1970 amendments to the Bankruptcy Act gave the bankruptcy courts summary jurisdiction to determine dischargeability, including liability issues. The amendments revealed this by including two provisions. One preserved the right to a jury trial. The other provision was a response to the Supreme Court's decision in *Katchen.* It provided that the filing of a complaint was not submission to the court's jurisdiction for any purpose other than deciding dischargeability. 11 U.S.C. § 35c(3) & (5) (1978); 1A James W. Moore & Lawrence P. King, *Collier on Bankruptcy* ¶ 17.28 & ¶ 17.28A[6] (14th ed.1988).

The provision preserving the right to jury trial stated: "Nothing in this subdivision c shall be deemed to affect such right of any party, upon timely demand, to a trial by jury where such right exists." 11 U.S.C. § 35(c)(5) (1978). The meaning of this statute was debated in a series of law review articles by Professor Countryman and Judge Herzog. Vern Countryman, *The New Dischargeability Law,* 45 Am. Bankr.L.J. 1 (1971); Asa S. Herzog, *The Case for Jury Trials on the Issue of Dis-*

*chargeability,* 46 Am.Bankr.L.J. 235 (1972); Vern Countryman, *Jury Trials in Bankruptcy—A Reply to Referee Herzog,* 46 Am.Bankr.L.J. 305 (1972).

Judge Herzog thought the procedure should be essentially the same as in state court; the court would allow the jury to decide the factual issues regarding liability, and the court would follow the jury's findings of fact when it decided dischargeability. The result was to grant a right to jury trial of factual issues regarding dischargeability.

Professor Countryman reasoned that a different procedure was required because the statute did not confer a right to jury trial on dischargeability issues. According to Professor Countryman, the judge should decide dischargeability first based on his own findings of fact, and if he found the debt to be non-dischargeable, then he would allow the jury to decide liability and damages. Of course, the facts relevant as to liability and dischargeability would often overlap. Thus, Professor Countryman's approach called for the court and the jury to decide the same factual questions twice if the debt were non-dischargeable.

The jury trial provision assumed there was no seventh amendment right to jury trial on the liability issues in a dischargeability proceeding. That is why the statute attempted to preserve the right to a jury trial on the liability issues *as the right existed under state law.* It made no sense to preserve the right under the seventh amendment since it did not exist. Neither Professor Countryman nor Judge Herzog took the view that the seventh amendment required a jury trial on the liability issues.

Congress, Judge Herzog, and Professor Countryman were not the only ones who thought there would be no constitutional right to a jury trial in the bankruptcy court on any of the issues in a dischargeability proceeding. The courts apparently agreed. *Watts v. Ellithorpe,* 135 F.2d 1 (2d Cir.1943); *In re Anthony,* 42 F.Supp. 312 (E.D.Ill.1941). These cases were de-

cided before the 1970 amendments, when the federal courts did not have general jurisdiction to decide the effect of discharge on a particular debt. They had jurisdiction only in exceptional cases; exceptional cases generally fit the mold of traditional equitable proceedings, such as a suit for an injunction, in which the parties had no right to a jury trial. *Local Loan Co. v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934); 1A James W. Moore & Lawrence P. King, *Collier on Bankruptcy* ¶ 17.28 (14th ed.1988). The two cited cases, *Watts* and *Anthony*, were not exceptional cases. In each case a creditor filed the equivalent of a complaint to determine dischargeability. *Fed.R.Bank.P.* 4007 & 7001(6). The courts refused to decide dischargeability. They justified this result partly on the ground that a trial in federal court would deprive the debtor of the right to a jury trial.

The Supreme Court's decision in *Katchen v. Landy* also preceded the 1970 amendments. It doubtlessly influenced Congress to believe the parties would have no constitutional right to a jury trial in bankruptcy court on either the dischargeability or the liability issues. H.R.Rep. No. 91–1502 (1970) (statement of Royal E. Jackson). Does the reasoning in *Katchen* support the view that there would be no right to a jury trial in bankruptcy court on the liability issues?

The result in *Katchen* depended on the creditor's filing a proof of claim. This made the trustee's attempt to recover the preferential transfers part of the claims allowance process. The Supreme Court viewed the allowance of claims as a traditional equitable proceeding in which the parties did not have the right to a jury trial. *Katchen*, 86 S.Ct. 467, 476–77 *citing Barton v. Barbour*, 104 U.S. 126, 133–34,

26 L.Ed. 672 (1881); *see also Granfinanciera*, 109 S.Ct. 2782, 2798–2800.[3]

There is an obvious distinction between the claims allowance process and dischargeability proceedings. Assume that a creditor files a dischargeability complaint; the court determines the amount of the debt and declares it to be non-dischargeable. The holding that the debt is non-dischargeable does not affect the creditor's claim against the bankruptcy estate. Debts are not given priority in the order of payment or the right to a larger payment solely on the ground they are non-dischargeable. 11 U.S.C. § 726 & § 507(a).[4] The court assumes the decision would bind the bankruptcy trustee as to the amount of the creditor's claim against the bankruptcy estate. *But see New York Department of Environmental Conservation v. Lee (In re Lee)*, 222 B.R. 32 (Bankr.W.D.N.Y.1998). Nevertheless, the main purpose of the dischargeability suit was not the establishment of a claim against the bankruptcy estate for the purpose of sharing in the dividend from the estate. The main purpose was to prove the right to collect the debt from the debtor after the bankruptcy.

This is even more obvious in the typical consumer no-asset case. The debtor does not have assets that can be liquidated to produce a dividend to unsecured creditors. There is no need for unsecured creditors to establish their claims against the bankruptcy estate. *See Fed.R.Bankr.P.* 2002(e). An unsecured creditor that files a dischargeability complaint in a no-asset case is attempting only to establish the right to collect from the debtor after the bankruptcy.

In summary, the main purpose of a dischargeability suit is to prove a claim

---

**3.** In *Katchen* most of the Supreme Court's discussion of summary jurisdiction dealt with whether the trustee's objection was within the bankruptcy court's summary jurisdiction, not with whether summary jurisdiction was intended to take away the right to a jury trial. *Katchen*, 86 S.Ct. 467, 470–76. The Supreme

Court considered the jury trial question only after deciding that summary jurisdiction applied. *Katchen*, 86 S.Ct. 467, 476–78.

**4.** The opposite is true. Some priority debts are made non-dischargeable. 11 U.S.C. § 523(a)(1)(A), § 507(a)(7) & § 523(a)(5).

against the debtor for the purpose of collecting from the debtor after bankruptcy; the main purpose is not to prove a claim against the bankruptcy estate for the purpose of collecting from the bankruptcy estate.

■ This distinction from the claims allowance process does not necessarily prevent the reasoning of *Katchen* from applying. Chapter 7 bankruptcy has two fundamental purposes in the case of an individual debtor: (1) collection and liquidation of the debtor's assets for the benefit of unsecured creditors and (2) release of the debtor from his debts by the granting of a discharge. Proceedings that deal with claims come within the first purpose and are equitable as decided in *Katchen*. The court is of the opinion that proceedings as to the discharge are likewise equitable.

This is more obvious in proceedings to deny the discharge completely. 11 U.S.C. § 727; *Fed.R.Bankr.P.* 4004 & 7001(4). Past bankruptcy statutes created the right to a jury trial because the issues would have been legal issues in other types of proceedings. The statutes recognized that the parties did not have the constitutional right to a jury trial because discharge proceedings were equitable. *In re Holst*, 11 F. 856 (W.D.Tenn.1882); *In re George*, 10 F.Cas. 193 (D.Mass.1869); *In re Lothrop*, 15 F.Cas. 921 (D.Mass.1842).

In this regard, the court has found little information regarding English practice. Generally, the judges in the English system have had much more discretion than judges in the American system to condition or limit the discharge. Douglass G. Boshkoff, *Limited, Conditional, and Suspended Discharges in Anglo–American Bankruptcy Proceedings*, 131 U.Pa.L.Rev. 69 (1982). This suggests that questions regarding discharge in the English system have always been dealt with by the judge.

The court sees no significant difference between determining the right to a discharge and deciding whether a particular debt is excepted from discharge. A proceeding that deals with dischargeability of a particular debt is still equitable.

The court has already explained the reasoning of Congress and the courts before the 1970 amendments to the Bankruptcy Act. They thought there would be no right to a jury trial in bankruptcy court on any of the issues in a dischargeability proceeding, because the proceeding would be within the court's summary jurisdiction. *Katchen v. Landy* suggests that Congress can deny the right to a jury trial in order to improve the efficiency of the bankruptcy process. *Katchen*, 86 S.Ct. 467, 478. But this was not the longstanding basis for the opinion that there was no right to a jury trial in summary proceedings. No, the point was the nature of the proceedings that Congress could place within the court's summary jurisdiction. Summary jurisdiction was thought to include only matters of case administration that were traditionally dealt with in equitable proceedings. This is apparent in the Supreme Court's earlier discussion in *Katchen* as to whether Congress meant to give the bankruptcy court summary jurisdiction of the trustee's objection to the creditor's claim on the ground that it has received preferential transfers. *Katchen*, 86 S.Ct. 467, 470–71. Thus, the opinion of Congress and the courts that dischargeability proceedings were appropriate for summary jurisdiction was equivalent to the opinion that they were traditional equitable proceedings in which the parties did not have the right to jury trial. S. Elizabeth Gibson, *Jury Trials in Bankruptcy: Obeying the Commands of Article III and the Seventh Amendment*, 72 Minn.L.Rev. 967, 1010 – 1014, 1025 – 1027 (1988).[5]

---

5. *Katchen* might be treated as holding that filing a proof of claim is submission to equitable procedures, with no right to a jury trial, for all proceedings in the bankruptcy case, but it seems more accurate to say that filing a

proof of claim begins an equitable proceeding as to allowance of the claim. A suit to recover preferential transfers from a creditor that has filed a proof of claim is necessarily an equitable proceeding as to allowance of the

■ The distinction between the claims allowance process and dischargeability disputes does not require a different result in this proceeding. The creditor's main purpose in a dischargeability suit is not the establishment of a claim against the bankruptcy estate. Nevertheless, discharge is one of the fundamental steps in the administration of the bankruptcy case, just as fundamental as the allowance of claims. Discharge and all questions regarding the discharge are part of the basic *equitable* process of administering the bankruptcy case. This includes establishment of a claim against the debtor for the purpose of proving it should be excepted from discharge. Thus, the same reasoning applies as in *Katchen v. Landy.* The issues regarding liability are equitable issues when they arise in the process of the determining dischargeability. The court is not saying that the issues become equitable issues because the bankruptcy court is a court of equity. The key is the nature of proceedings related to the discharge as equitable proceedings.

The Supreme Court's later decision in *Granfinanciera* did not overrule or undermine the reasoning of *Katchen* on this point. Indeed, the Supreme Court left no doubt as to the basis of the result in *Katchen:* when the creditor filed a proof of claim, it commenced the claims allowance process, and that process encompassed the trustee's objection based on the creditor's alleged receipt of preferential transfers. The creditor had no right to a jury trial in the equitable proceedings as to allowance of its claim. *Granfinanciera,* 109 S.Ct. 2782, 2798–2799.

In summary, *Katchen v. Landy* supports the conclusion that there is no right to a jury trial in dischargeability proceedings, even on the liability issues. All proceedings that deal with whether the debtor is entitled to a discharge are equitable proceedings, including a proceeding to deter-

mine the dischargeability of a particular debt.

■ The court realizes that this reasoning makes the old distinction between summary and plenary proceedings relevant to determining the right to a jury trial. This is true because summary proceedings generally included only the traditional equitable proceedings at the heart of administering a bankruptcy case. *Granfinanciera* points out that core proceedings under the current law are not the same as summary proceedings under the Bankruptcy Act. 28 U.S.C. § 157(b). When Congress defined fraudulent transfer actions as core proceedings, it "simply reclassified a preexisting, common-law cause of action that was not integrally related to the reformation of debtor-creditor relations." *Granfinanciera,* 109 S.Ct. 2782, 2800. In other words, the designation of fraudulent transfer suits as "core" did not make them part of the traditional equitable proceedings at the heart of a bankruptcy case—proceedings such as allowing claims and determining the right to or the effect of a discharge—that were part of the court's summary jurisdiction under the Bankruptcy Act. *See also* S. Elizabeth Gibson, *Jury Trials in Bankruptcy: Obeying the Commands of Article III and the Seventh Amendment,* 72 Minn.L.Rev. 967, 1025 – 1026 (1988). The identification of a proceeding as summary or plenary under the Bankruptcy Act is evidence as to the historical treatment of the proceeding as equitable or legal.

The court concludes that proceedings as to the discharge are equitable proceedings under the historical test for determining whether the seventh amendment provides the right to a jury trial. There is no right to a jury trial unless it makes a difference that the plaintiffs may obtain a traditional legal remedy, a judgment holding the debtors liable for the amount of the debt. Again, the Supreme Court's reasoning in

claim, even if the suit is not technically an objection to the claim. *Langenkamp v. Culp,* 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed.2d 343

(1990) *reh. den.* 498 U.S. 1043, 111 S.Ct. 721, 112 L.Ed.2d 709 (1991).

*Katchen v. Landy* applies. If the plaintiffs prevail, a judgment on liability and damages will be an equitable remedy—a remedy that can be decreed by a court of equity. *Katchen,* 86 S.Ct. 467, 477. Thus, the nature of the remedy does not prevent the issues from being equitable.

The plaintiffs are not entitled to a jury trial because dischargeability proceedings are equitable. In this context, even the liability issues are equitable. In light of this decision the court need not consider whether Congress can constitutionally deny the parties the right to a jury trial on the ground that the question of dischargeability involves "public rights." *Granfinanciera,* 109 S.Ct. 2782, 2794–2800. Likewise, the court need not consider whether the bankruptcy court can conduct a jury trial. 28 U.S.C. § 157(e); *131 Liquidating Corp. v. LaSalle Capital Group, Inc. (In re 131 Liquidating Corp.),* 222 B.R. 209 (S.D.N.Y.1998); *First Omni Bank v. Thrall (In re Thrall),* 196 B.R. 959 (Bankr.D.Colo.1996).

There is, however, a final question regarding two decisions by the Sixth Circuit. *Longo v. McLaren* was a creditor's suit to have a debt excepted from discharge. *Longo v. McLaren (In re McLaren),* 3 F.3d 958 (6th Cir.1993). The bankruptcy court had held the debt non-dischargeable under § 523(a)(2)(A), which is the exception for debts resulting from fraud, false pretenses, or false representation. *Longo v. McLaren (In re McLaren),* 136 B.R. 705 (Bankr.N.D.Ohio 1992); 11 U.S.C. § 523(a)(2)(A). The bankruptcy court also denied the debtor's request for a jury trial. *Longo v. McLaren (In re McLaren),* 129 B.R. 480 (Bankr.N.D.Ohio 1991).

The bankruptcy court reasoned that the debtor was not entitled to a jury trial in bankruptcy on any of the issues, including the liability issues. The bankruptcy court's reasoning was basically the same as this court's reasoning. Establishing liability for the purpose of excepting the debt from discharge is essentially the same as establishing a claim against the bankruptcy estate. Dischargeability, like the allowance of claims, involves fundamental ("core") bankruptcy issues that have traditionally been dealt with by equitable proceedings. *Longo,* 129 B.R. 480, 483–84.

The bankruptcy court mentioned the possibility of abstaining and allowing liability to be determined in a different court where the debtor might have the right to a jury trial. The bankruptcy court declined to do so because the debtor did not prove it was justified. *Longo,* 129 B.R. 480, 484.

The Sixth Circuit affirmed the decision to deny the debtor a jury trial on all the issues. It adopted the reasoning of *In re Hallahan* that all the issues are equitable because a proceeding to determine dischargeability is historically equitable. *Longo,* 3 F.3d 958, 960; *N.I.S. Corp. v. Hallahan (In re Hallahan),* 936 F.2d 1496 (7th Cir.1991).

The decision that appears to cause a problem is the Sixth Circuit's later decision in *Stone v. Kirk,* 8 F.3d 1079 (6th Cir.1993). The plaintiffs asserted securities fraud claims against the debtor and sought to have the debts declared non-dischargeable. The dischargeability proceeding was consolidated with a securities fraud case that was already pending in the district court. The district court directed a verdict for the debtor on dischargeability under § 523(a)(4) and § 523(a)(6), but not as to dischargeability under the fraud exception, § 523(a)(2). The district court sent both the securities fraud issues and the dischargeability issues to the jury, which returned a verdict for the plaintiffs. The debtor contended the district court committed reversible error by allowing the jury to decide the dischargeability issues.

The Sixth Circuit disagreed. It said the plaintiffs were entitled to go to the jury on the securities fraud issues, and when the district court decided dischargeability, it was bound by the jury's determination of the facts. *Stone v. Kirk,* 8 F.3d 1079, 1090. The bankruptcy court can stay a dischargeability proceeding and allow the

question of liability to be tried in a different court where the parties will have the right to a jury trial. The bankruptcy court will then decide dischargeability, but it will be bound by the jury's determination of the facts according to the doctrines of res judicata and collateral estoppel. *In re Yaffe*, 58 B.R. 26 (Bankr.D.D.C.1986); *In re Davis*, 91 B.R. 470 (Bankr.N.D.Ill. 1988). The situation in *Stone v. Kirk* was analogous. It was not error for the district court to allow the jury to determine the facts relevant to liability for securities fraud even though the facts were also relevant to dischargeability. The Sixth Circuit relied on *Longo* in deciding *Stone v. Kirk*. Certainly the Sixth Circuit did not mean to overrule *Longo* by holding that either party to a dischargeability suit will have the right to a jury trial on liability issues when the right would exist if there were no bankruptcy.

The court will enter an order denying the plaintiffs' request for a jury trial.

This memorandum constitutes findings of fact and conclusions of law as required by *Fed.R.Bankr.P.* 7052.