### In re PHELPS TECHNOLOGIES, INC. and Phelps Tool and Die Houston, Inc., Debtors.

### The Official Committee of Unsecured Creditors, Plaintiff,

### v.

### Daniel Welsh, William O'Connor and Welsh & O'Connor, P.C., a Missouri professional corporation, Defendants.

Bankruptcy Nos. 98–40371– 1–11, 98–40372–2–11.

United States Bankruptcy Court, W.D. Missouri, Western Division.

Sept. 15, 1999.

---

**36.** *Toibb v. Radloff*, 501 U.S. 157, 163, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991).

**37.** 11 U.S.C. § 1129(a)(11).

James A. Chatz, Stuart Gimbel, Lincolnwood, IL, Michael H. Berman, Overland Park, KS, for Plaintiff or Petitioner.

Thomas V. Bender, Scott J. Goldstein, Kansas City, MO, for Defendant or Respondent.

## MEMORANDUM OPINION AND ORDER

JERRY VENTERS, Bankruptcy Judge.

This matter comes before the Court on a Motion for Abstention filed by Defendants Daniel Welsh, William O'Connor, and Welsh & O'Connor, P.C., requesting the

Court to abstain from further proceedings in this Adversary Proceeding pursuant to 28 U.S.C. § 1334(c) and Rule 5011, Fed. R. Bankr.P. As grounds for abstention, the Defendants assert that state law issues predominate in the action, that some of the Defendants are entitled to a trial by jury, and that there may be additional non-debtor parties to be joined in the action. The Plaintiff, the Official Committee of Unsecured Creditors, opposed the Motion.

Because the Court finds that state law issues do, indeed, predominate the action and that the individual Defendants, Welsh and O'Connor, have not waived their right to a trial by jury and do not consent to a jury trial in the Bankruptcy Court, the Court will grant the Defendants' Motion for Abstention.[1]

Jurisdiction of these matters is properly in this Court under 28 U.S.C. §§ 157 and 1334. This Memorandum Opinion and Order constitutes the Court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

## FACTUAL BACKGROUND

The Debtors, Phelps Technologies, Inc., and Phelps Tool and Die Houston, Inc., ("Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code ("Code") on February 2, 1998. The two cases were substantively consolidated, and after the sale of a substantial portion of the Debtors' assets, the Court on January 11, 1999, confirmed a Joint Plan of Reorganization, which required the orderly liquidation and sale of the Debtors' remaining assets.

The Complaint giving rise to the present proceeding was filed by The Official Committee of Unsecured Creditors ("Plaintiff" or "Committee") on May 5, 1999. According to the Complaint,[2] Welsh

---

1. At the same time they filed the Motion for Abstention, the Defendants filed a Motion to Withdraw the Reference, asking the District Court to withdraw the reference of this case from the Bankruptcy Court. On July 27, 1999, District Judge Gary A. Fenner denied the Motion.

2. For purposes of this Opinion, the factual allegations contained in the Complaint will be

was the Debtors' chief financial officer from approximately November 1995 through November 1997 and was principally responsible for controlling and overseeing all aspects of the Debtors' finances, ranging from managing and monitoring the day-to-day financial operations to developing long-term financial strategies. During that same time period, O'Connor supervised and was in control of certain departments and operations of the Debtors and worked with Welsh in managing the day-to-day operations and in developing long-term financial strategies. At the same time, Welsh and O'Connor were the principals of Defendant Welsh & O'Connor, P.C., an accounting firm that had its offices on the Debtors' premises. The firm allegedly billed the Debtors for services provided as outside accountants and consultants.

The Complaint consists of five counts. Count I alleges that all Defendants were negligent in providing their professional services to the Debtors and seeks a monetary judgment of not less than $14,000,000.00. Count II alleges a breach of fiduciary duties by Welsh and O'Connor individually and asks the Court to hold Welsh and O'Connor jointly and severally liable for losses incurred by the Debtors in an amount of not less than $14,947,581.64. Count III seeks to recover at least $277,234.15 in payments made to all three Defendants for their professional services, on grounds that the Defendants caused the Debtors to pay their billing statements at a time when the Debtors were insolvent, and that these actions were taken with actual intent to hinder, delay and defraud the Debtors and their creditors, in violation of 11 U.S.C. § 548(a)(1)(A). Count IV alleges, alternatively, that the $277,234.15 in fee payments were constructively fraudulent in violation of 11 U.S.C. § 548(a)(1)(B). Finally, Count V alleges that the $277,-

234.15 in fee payments, plus an additional $670,347.49 in payments made to all three Defendants from January 12, 1996, through January 30, 1997, were made in violation of 11 U.S.C. § 544 and the Missouri Uniform Fraudulent Transfer Act, Sections 428.005 to 428.059, RSMo., and seeks recovery of not less than $947,581.64.

None of the Counts of the Complaint seeks injunctive or other equitable relief. Only monetary damages are sought. Therefore, the Adversary Proceeding is an action at law, not equity. "[W]here an action is simply for the recovery...of a money judgment, the action is one at law." *Pernell v. Southall Realty*, 416 U.S. 363, 370, 94 S.Ct. 1723, 1727, 40 L.Ed.2d 198 (1974)(quoting *Whitehead v. Shattuck*, 138 U.S. 146, 151, 11 S.Ct. 276, 277, 34 L.Ed. 873 (1891)).

## DISCUSSION

Permissive or discretionary abstention is governed by 28 U.S.C. § 1334(c)(1). Under that statute, a court may abstain from hearing a proceeding, whether the proceeding is core or non-core, as defined in 28 U.S.C. § 157. Section 1334(c)(1) provides:

Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

11 U.S.C. § 1334(c)(1).

■■■ At the outset, we are mindful that federal courts generally should exercise their jurisdiction if it is properly conferred, and that abstention is the exception rather than the rule. *Matter of Chicago, Milwaukee, St. Paul & Pacific Railroad Company*, 6 F.3d 1184, 1189 (7th Cir.1993). Discretionary abstention under

taken as true. However, the Defendants have not filed an Answer and therefore have not

admitted any of the factual allegations.

§ 1334(c)(1) is "informed by principles developed under the judicial abstention doctrines." *Id.*[3]

■ Because the statute speaks only in general terms ("the interest of justice" and "the interest of comity," for example) and does not clearly delineate any criteria to guide us in reaching a discretionary decision to abstain, the courts have usually looked to the "well-developed notions of judicial abstention when applying section 1334(c)(1)." *Id.* Therefore, in determining whether abstention is appropriate under § 1334(c)(1), the courts have considered numerous factors, among them the following:

(1) The extent to which the issues involve difficult or unsettled issues of state law.

(2) The extent to which state law or other esoteric and technical issues predominate.

(3) The effect of abstention on the efficient administration of the bankruptcy proceedings.

(4) The presence of a commenced state law action in which the matter may be determined.

(5) The degree of relatedness to the main bankruptcy proceeding.

(6) The burden on the bankruptcy court's docket.

(7) The likelihood that one of the parties is forum shopping.

(8) The presence or necessity in the proceeding of non-debtor parties.

(9) The existence of a jurisdictional basis other than 28 U.S.C. § 1334.

(10) The existence of a right to a jury trial and whether the parties do or do not consent to jury trial in the bankruptcy court.

(11) The financial condition of the parties.

(12) The case's status as a "related" matter rather than a core proceeding.

*Tarkio College v. Bower (In re Tarkio College)*, 137 B.R. 34, 36 (W.D.Mo.1992); *Republic Reader's Service, Inc. v. Magazine Service Bureau, Inc. (In re Republic Reader's Service, Inc.)*, 81 B.R. 422, 429 (Bankr.S.D.Tex.1987); *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1169 (9th Cir.1990); 9 COLLIER ON BANKRUPTCY ¶ 5011.02[1], p. 5011–12 (15th ed. rev.1999).

■ After considering the Plaintiff's Complaint in light of these factors, the Court is convinced that the proper course to take in this instance is to abstain from hearing this Adversary Proceeding. Several factors lead us to that conclusion.

First, state law issues are predominant. Two of the Counts (I and II) allege professional negligence (or malpractice) and breach of fiduciary duties, which are strictly state law causes of action. A third Count (V) relies on the Missouri Uniform Fraudulent Transfer Act, made applicable pursuant to 11 U.S.C. § 544(b), to avoid certain transfers that were made by the Debtors.

The remaining Counts (III and IV), while based on §§ 548(a)(1)(A) and (a)(1)(B), are fully intertwined with state law. The interplay of § 548 and state fraudulent transfer law is perhaps best summarized by Collier on Bankruptcy:

The UFCA [Uniform Fraudulent Conveyance Act] and the UFTA [Uniform Fraudulent Transfer Act] play an integral part of fraudulent transfer avoidance under the Bankruptcy Code. These two statutes are the sources of state statutory fraudulent transfer laws, and most of the states have enacted either one or the other. *Cases decided under the UFCA and UFTA are considered to be persuasive authority for similar issues arising under section 548 of the Code.*

5 COLLIER ON BANKRUPTCY ¶ 548.01[4], p. 548–8 (15th ed. rev.1999)(emphasis added).

---

**3.** This case does not trigger the mandatory abstention provisions of 11 U.S.C. § 1334(c)(2) because no action has been commenced in the State courts.

■ Under § 548(a), a bankruptcy trustee may avoid any transfer of an interest of the debtor in property. What constitutes a transfer is a matter of federal law, since "transfer" is defined in the Bankruptcy Code. *McKenzie v. Irving Trust Co.*, 323 U.S. 365, 369–70, 65 S.Ct. 405, 407–08, 89 L.Ed. 305 (1945). However, since "property" and "interests in property" are not defined in the Bankruptcy Code, they are creatures of state law, in the absence of controlling federal law. *Barnhill v. Johnson*, 503 U.S. 393, 398, 112 S.Ct. 1386, 1389, 118 L.Ed.2d 39 (1992). *See also Matter of Simpson*, 36 F.3d 450, 451–52 (5th Cir.1994). In the present case, then, both state and federal law are implicated, but because the State of Missouri has enacted the UFTA, that law will be persuasive on the issue of whether the transfers to the Defendants were fraudulent transfers. For this reason, state law will predominate on the § 548 claims, as well as on the three other causes of action. While these are not difficult or unsettled issues of state law—in fact, they are generally well-settled issues with which this Court is very familiar and with which this Court deals on a regular basis—they are nonetheless legal issues best resolved by the state courts. When the issues in an adversary proceeding are at heart state law claims rather than federal claims, it is appropriate that the bankruptcy court abstain from hearing those claims. *Eubanks v. Esenjay Petroleum Corp.*, 152 B.R. 459, 465 (E.D.La. 1993). Moreover, "[w]here a cause of action for monetary damages based primarily on state law can be litigated in state court without substantial delay and disruption to the orderly administration of the estate, the best forum for resolution of that action is state court, *irrespective* of whether the legal issues present unsettled questions of state law." *Republic Reader's Service, Inc. v. Magazine Service Bureau, Inc. (In re Republic Reader's Service, Inc.)*, 81 B.R. 422, 426 (Bankr.S.D.Tex.1987)(emphasis in original).

■ Second, individual Defendants Welsh and O'Connor have not waived their Seventh Amendment right to a jury trial and have stated that they do not and will not consent to a jury trial in the Bankruptcy Court (all three Defendants filed a demand for jury trial in the District Court when they filed their Motion for Withdrawal of the Reference). In *Granfinanciera, S.A., v. Nordberg*, 492 U.S. 33, 36, 109 S.Ct. 2782, 2787, 106 L.Ed.2d 26 (1989), the Supreme Court held that the Seventh Amendment entitles a person to a trial by jury if that person has not submitted a claim against the bankruptcy estate and is then sued in the bankruptcy court for an allegedly fraudulent monetary transfer, even though Congress has designated fraudulent conveyance actions as "core proceedings" in 28 U.S.C. § 157(b)(2)(H). The Court ruled that Congress may only deny trials by jury in actions at law in those cases where "public rights" are being litigated; it "lacks the power to strip parties contesting matters of private right [such as tort, contract, and property claims] of their constitutional right to a trial by jury." *Granfinanciera*, 492 U.S. at 51–52, 109 S.Ct. at 2795. As we have noted above, all of the claims brought by the Plaintiff in the present case seek monetary damages and no other relief, and therefore clearly are actions at law. Also, they are clearly matters of "private rights." Thus, the individual Defendants are entitled to a jury trial, if they have not filed a claim against the bankruptcy estate.

■ The Committee has argued, in its response to the Defendants' Motion to Withdraw the Reference filed in the District Court, that the proof of claim filed by Welsh & O'Connor, P.C., against Phelps Technologies, Inc., "subjects all three Defendants to this Court's jurisdiction and waives their rights to a jury trial." The Committee argues that, by filing the proof of claim, the professional corporation has "opened up" the corporation's principals,

Welsh and O'Connor, to counterclaims "for their individual negligence" in performing services for the Debtors. This argument was made entirely without any legal support,[4] and the Court finds it to be without merit. It is basic hornbook law that a corporate entity is a separate and distinct entity from its shareholders and owners, and the Court does not believe that the filing of a proof of claim by the professional corporation in this case in any way subjects the corporate principals to the jurisdiction of the bankruptcy court or in any way waives their Seventh Amendment right to a trial by jury. Furthermore, the individual Defendants have not filed a statement consenting to a jury trial in the Bankruptcy Court, as required by Rule 9015(b), and have, in fact, stated in their pleadings that they will not so consent. If the Court were to refuse to abstain in this case, we would be confronted with the very awkward situation in which two of the Defendants would be entitled to a jury trial and the third Defendant would not be, a situation that would be fertile grounds for error and inconsistent results. That situation is easily avoided by this Court's abstaining and allowing the parties to litigate all issues before a jury in a state court.

▮▮▮ Third, there is no independent basis for this Court's jurisdiction over the claims brought by the Committee. The only reason the Committee filed its Complaint in this Court was because the Debtors had filed bankruptcy proceedings here. There is no diversity of citizenship that would confer jurisdiction on the federal court, inasmuch as the parties are all legal residents of Missouri. If it were not for the bankruptcy proceeding, this cause of action could not be brought in federal Court. "Abstention is ... appropriate where the action could not have been commenced in federal court absent bankruptcy jurisdiction and the issues can be timely adjudicated in state court." *National Un-*

ion *Fire Insurance Company of Pittsburgh, PA v. Titan Energy, Inc. (In re Titan Energy, Inc.)*, 837 F.2d 325, 333 (8th Cir.1988).

▮▮▮ The Committee argues that the confirmed Joint Plan of Reorganization confers jurisdiction on the Bankruptcy Court, because Article XII of the Plan stated that the Court would retain jurisdiction "to adjudicate all Avoidance Actions and other Causes of Action whether or not ... filed ... before or after the Confirmation Date." This language is common to reorganization plans and does not confer any special post-confirmation jurisdiction on the Bankruptcy Court. Although there could be instances where the Court would have jurisdiction over matters arising after confirmation, as a general rule the Bankruptcy Court's post-confirmation jurisdiction is limited to matters concerning the implementation or execution of a confirmed plan. *Cunningham v. Pension Benefit Guaranty Corp.*, 235 B.R. 609, 617 (N.D.Ohio 1999). Even if it were to be assumed for the sake of argument that the Defendants had somehow consented to jurisdiction in this Court—which the Court does not believe the individual Defendants have done—it is well-settled that jurisdiction cannot be conferred on this or any other court by agreement of the parties, *Grant Paper Company v. Communicraft, Inc. (In re City Wide Press, Inc.)*, 107 B.R. 68, 70 (Bankr.E.D.Pa.1989), and that subject matter jurisdiction cannot be created by consent of the parties, *In re Hashim*, 188 B.R. 633, 640 (Bankr.D.Ariz.1995). If jurisdiction cannot be conferred on the court by agreement of the parties to an action, obviously jurisdiction, otherwise lacking, cannot be conferred on the court by the unilateral act of only one party to the action.

Fourth, abstention by this Court will not unduly delay the administration of this bankruptcy estate. As noted, the Court

---

4. "A party who fails to support an argument with authority forfeits the argument." *Sulli-*

*van v. Thies (In re Dergance )*, 218 B.R. 432, 436 (Bankr.N.D.Ill.1998).

has already confirmed a Joint Plan of Reorganization that provides, generally, for the sale and liquidation of all assets of the Debtors. The pending action is designed to assist in the liquidation of the assets. Whether it is tried in the state court or here will not affect the further administration of the estate. While it is probable that trial could be had more quickly in this Court, that is insufficient justification for the Court to refuse to abstain in view of the much more substantial obstacles to jurisdiction discussed above. Moreover, there has been no suggestion that a timely trial could not be had in the state courts, and the Plaintiff has not suggested that litigating these matters in the state courts would unduly delay the closing of the bankruptcy estate or unfairly prejudice the bankruptcy estate's creditors.

Finally, contrary to the Committee's suggestions, the Court does not believe that the Defendants are engaged in unacceptable or improper "forum shopping." It is not unacceptable or improper for the Defendants to assert their right to a jury trial in a forum having proper jurisdiction over them. In fact, that seems to be a perfectly legitimate defense strategy. The Defendants unsuccessfully sought to have this matter removed to the District Court (by seeking withdrawal of the reference), and it appears that the matter may well end up in a state court, which may or may not meet with the Defendants' approval. If the Defendants have attempted to forum shop, they have not been notably successful, and this Court's decision to abstain will not advance their cause in that regard.

The Court has carefully considered the other factors listed above and finds that none is of sufficient weight to affect the Court's decision or to merit detailed discussion. In summary, while we recognize that abstention is a narrow exception to the exercise of federal jurisdiction, we believe that the better part of discretion counsels abstention in this case.

Therefore, it is

**ORDERED** that the Defendants' Motion for Abstention, pursuant to 28 U.S.C. § 1334(c), should be and is hereby SUSTAINED.

The Clerk is directed to enter judgment in accordance with this Opinion.

**SO ORDERED.**