**In re KRIGEL'S, INC., Debtor.**

**Krigel's, Inc., Plaintiff,**

v.

**ARY Jewelers, L.L.C., et al., Defendants.**

**Bankruptcy No. 01–40276–11–JWV.
Adversary No. 01–4089.**

United States Bankruptcy Court,
W.D. Missouri,
Western Division.

June 8, 2001.

Erlene W. Krigel, Kansas City, MO, for Debtor.

Brian T. Fenimore, Stephen B. Sutton, Kansas City, MO, for Plaintiff.

Lisa A. Epps, Ronald S. Weiss, Scott J. Goldstein, Bruce E. Strauss, Thomas N. Lane, Robert Keith Johnston, Kansas City, MO, for Defendants.

## MEMORANDUM OPINION AND ORDER

JERRY W. VENTERS, Bankruptcy Judge.

This matter comes before the Court on a Motion for Abstention filed by Defendant ARY Jewelers, L.L.C. ("ARY"). ARY requests this Court to abstain from further proceedings in this Adversary Proceeding pursuant to 28 U.S.C. § 1334(c)(1) and Federal Rule of Bankruptcy Procedure 5011 on the grounds that (i) state law

issues predominate the action and the Defendants are entitled to a trial by jury; and (ii) all but one of the criteria for mandatory abstention pursuant to 28 U.S.C. § 1334(c)(2) are present. The Debtor and the Official Committee of Unsecured Creditors, which has sought to intervene in this action, oppose ARY's Motion for Abstention.

In sum, primarily because state law issues predominate the action and at least the two individual Defendants are entitled to a jury trial, the Court hereby grants ARY's Motion for Abstention.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. The following Memorandum Opinion and Order constitute Findings of Fact and Conclusions of Law as required by Federal Rule of Bankruptcy Procedure 7052.

## FACTUAL BACKGROUND

Debtor Krigel's, Inc. (hereafter "Krigel's" or "Debtor"), has filed an Adversary Proceeding against Defendants ARY, Gohar Husain, and Abdul Razzak a/k/a Abdul Razzak Yacoob. The adversary action stems from a certain Stock Purchase Agreement ("Agreement") entered into on or about November 21, 2000, between ARY and Scott W. Krigel as Trustee of the Scott W. Krigel Revocable Trust created January 25, 1996. Scott W. Krigel is the president of Krigel's, formerly a family-owned chain of jewelry stores in the Midwest United States. The Agreement was apparently necessitated by cash flow and financial problems experienced by Krigel's for some time prior to the Agreement.

Pursuant to the Agreement,[1] Scott Krigel, as Trustee of the Revocable Trust,

---

1. The interpretation of the terms of the Agreement and any possible breach thereof are not at issue before this Court at this time. Although the Court outlines some of the basic provisions of the Agreement herein, such dis-

was to sell all of the outstanding shares of stock in Krigel's to ARY for the sum of $50,000.00. In addition, ARY was to pay Krigel's unsecured creditors 60 cents on the dollar in full settlement of their claims against Krigel's. The Agreement further provided that ARY was to pay Scott Krigel $1,450,000.00 for consulting services and an agreement not to compete. In exchange, Scott Krigel was to obtain the consent and support of Krigel's unsecured creditors for a pre-packaged Chapter 11 bankruptcy plan that was to be filed on behalf of Krigel's, in which the unsecured creditors were to receive 60% payment on their claims in the reorganization.

Although the purpose and character of the deposit is disputed, ARY deposited $6,000,000.00 (an amount roughly equal to the anticipated 60% payout to unsecured creditors) in the Bank of Blue Valley in contemplation of consummating the Agreement. In addition, ARY and Scott Krigel began negotiating with Foothill Capital Corporation ("Foothill Capital"), Krigel's primary secured lender, in the hope that Foothill Capital would continue its secured financing of Krigel's in ARY's hands. Along those lines, the Agreement provided that within four weeks from the execution date of the Agreement, ARY was to provide Scott Krigel with evidence of the consent of Foothill Capital to the continued financing of Krigel's obligations to Foothill Capital, and further provided that in the event Foothill Capital did not consent to the continued financing within the four-week period following the execution of the Agreement, the Agreement was to be void and of no further effect. As a result, according to ARY, the deadline for ARY to obtain Foothill Capital's consent to continued financing was December 19, 2000.

ARY states that it attempted, with the assistance of Scott Krigel, to obtain a com-

mitment for the continued financing from Foothill Capital but that the parties were unable to obtain the financing commitment before the December 19, 2000, deadline. Nevertheless, on December 20, 2000, Krigel's circulated a Disclosure Statement with a proposed Plan of Reorganization to its creditors. Although the alleged financing commitment deadline had passed and the Agreement was thus allegedly void, ARY and Scott Krigel continued to negotiate with Foothill Capital in an effort to salvage the transaction. Negotiations continued through April, but, according to ARY, Foothill Capital never explicitly made a commitment to lend to ARY on any particular terms.

Meanwhile, as contemplated by the parties from the outset, Krigel's filed its Chapter 11 bankruptcy petition in this Court on January 19, 2001, as a pre-packaged deal with the unsecured creditors, who, as previously stated, were to receive 60% of their claims under the Plan. On January 26, 2001, the Debtor submitted its Disclosure Statement and Plan of Reorganization to the Court. The Plan was modified on January 31, 2001, and a hearing on confirmation was set for March 5, 2001. The Plan and Disclosure Statement contemplated that financing with Foothill Capital would be arranged and that the Agreement with ARY would therefore be consummated.

Because ARY had not yet obtained a financing commitment from Foothill Capital, however, ARY orally requested a continuance of the March 5, 2001, confirmation hearing. This Court denied the request for continuance, confirmed the Plan at the conclusion of the hearing, and set the effective date thereof for March 16, 2001.

cussion is for background purposes only and is not intended to constitute findings of fact.

Still, ARY was unable to obtain financing and so, at the request of the Debtors, the effective date of the Plan was extended to March 30, 2001. On March 28, 2001, ARY notified Scott Krigel that it had still been unable to obtain a commitment from Foothill Capital to the continued financing of Krigel's. ARY sought an additional extension of the March 30 effective date so that it could continue its attempt to obtain financing, but the Debtor refused to consent and objected to ARY's standing to seek the extension from this Court. The Debtor also asserted that Foothill had, in fact, issued a loan commitment to ARY on March 27. The Court sustained the Debtor's objection to the extension request, finding that ARY lacked standing to object to or modify the Plan.

Nevertheless, ARY asserts it continued its attempts to negotiate with Foothill Capital, but that Foothill Capital refused to modify its terms. When it became clear that a reasonable financing commitment would not be forthcoming from Foothill Capital, ARY notified the Debtor on April 5, 2001, that closing the Agreement would be impossible. As a result, the Plan of Reorganization, which was based on consummation of the Agreement, would also fail.

Ultimately, after the arrangement with ARY fell apart, the Debtor sold its assets to Hannoush Jewelers, Inc., the highest bidder at an auction, pursuant to 11 U.S.C. § 363(b). Under the terms of this sale, it appears that the unsecured creditors will receive little or no payment on their claims.

On April 10, 2001, the Debtor filed the instant adversary action, alleging four counts: (I) that ARY breached the Agreement, to which the Debtor was a third party beneficiary; (II) that the Debtor had detrimentally relied on ARY's anticipated performance of the Agreement; (III) that ARY failed to comply with the Court's Order approving the Disclosure Statement and confirming the Plan; and (IV) that the individual Defendants Gohar Husain and Abdul Razzak Yacoob had fraudulently misrepresented the authority of Mr. Husain to act on behalf of ARY. In addition, because ARY had withdrawn a large portion of the deposited funds from the Bank of Blue Valley without advising the Debtor or the Court, the Debtor sought and obtained a Temporary Restraining Order from this Court which essentially froze all of ARY's assets in the United States. On April 25, 2001, this Court extended the TRO over ARY's objection.

On May 9, 2001, the Official Committee of Unsecured Creditors, which was appointed on April 12, 2001, filed a Motion to Intervene in this action along with a Complaint of Intervenor. The Committee's Complaint asserts three causes of action against ARY: (I) breach of the Stock Purchase Agreement, to which the unsecured creditors were third party beneficiaries; (II) a claim for damages based on ARY's failure to comply with the Court's Order approving the Disclosure Statement and confirming the Plan; and (III) a claim for injunctive relief asking the Court to permanently enjoin ARY from removing any further monies from the Habib American Bank in New York and the Bank of Blue Valley, banks in which ARY was known to have deposits. (Although the Committee has not been granted permission to intervene at this point, the Debtor and the Committee will hereafter be referred to collectively as the "Plaintiffs.")[2]

---

**2.** The Debtor has moved for leave to file an Amended Complaint, seeking to add a count alleging that the removal of the $6,000,000.00 from the Bank of Blue Valley was a violation of the automatic stay pursuant to 11 U.S.C. § 362(a)(3), requesting turnover of the

In addition, the various parties have filed multiple motions in this case, including, *inter alia*, motions to dismiss for lack of subject matter jurisdiction, motions to dismiss for lack of standing, motions for more definite statement, a motion to dismiss as to one of the individual Defendants for lack of service, and motions for withdrawal of the reference. Both ARY and individual Defendant Gohar Husain have also made jury demands.

Because the Court has determined that the abstention motion is dispositive and because the Court's ruling herein renders all other pending motions moot or irrelevant, the Court hereby considers that motion first.[3] As mentioned above, the Defendants have filed motions for withdrawal of the reference. The Plaintiffs have filed responses to those motions and that mo-

---

$6,000,000.00 pursuant to 11 U.S.C. § 542, and adding Abdul Razzaq Yaqoob Traders, who is allegedly in current possession of the $6,000,000.00, as a Defendant. The time for Defendants to respond to the motion has not yet run and leave to file the Amended Complaint has not been granted. Therefore, the Court will confine its discussion and ruling to the original Complaint.

3. The parties recently presented oral argument to this Court on the Committee's Motion to Intervene. The Court has considered the briefs and the arguments on that Motion and, at this point, has not reached a decision thereon. Because the Court concludes that abstention renders that issue moot, the Court declines to address that issue in detail at this time. Nevertheless, although not yet permitted to intervene, the Committee has filed a trial brief on the Defendants' right to jury trial, filed a joint brief with the Debtor on the abstention issue, and peripherally argued its position regarding abstention at the intervention hearing. Although the Committee has not formally been permitted to intervene at this time, the Court has nevertheless considered the Committee's position on both the abstention and jury trial issues.

In the event this Court's decision to abstain is appealed and reversed by the District Court or Bankruptcy Appellate Panel, *see* 28 U.S.C.

---

tion is in the process of being transmitted to the District Court. Although the District Court has not ruled those motions, this Court retains the authority to rule on the abstention motion pursuant to Federal Rule of Bankruptcy Procedure 5011(c).[4]

## DISCUSSION

■ 28 U.S.C. § 1334(c) creates two categories for abstention—permissive and mandatory. The Defendants do not, at this time, allege that the Court should mandatorily abstain pursuant to § 1334(c)(2).[5] Rather, the Defendants assert that this Court should exercise its discretion to abstain pursuant to § 1334(c)(1). Section 1334(c)(1), which governs permissive or discretionary abstention, provides:

§ 1334(d) ("Any decision to abstain or not to abstain made under this subsection ... is not reviewable by appeal or otherwise by the court of appeals ... or by the Supreme Court of the United States"), the Court will promptly address the merits of the Motion to Intervene.

4. Rule 5011(c) provides, in relevant part:

**(c) EFFECT OF FILING OF MOTION FOR WITHDRAWAL OR ABSTENTION.** The filing of a motion for withdrawal of a case or proceeding or for abstention pursuant to 28 U.S.C. § 1334(c) shall not stay the administration of the case or any proceeding therein before the bankruptcy judge except that the bankruptcy judge may stay, on such terms and conditions as are proper, proceedings pending disposition of the motion.
Fed. R. Bankr.P. 5011(c).

5. They do, however, assert that all but one of the elements for mandatory abstention are present and that this provides a separate ground for the Court's exercise of permissive abstention. Because the Court finds abstention to be appropriate under the Defendants' alternative theory for permissive abstention, a detailed discussion of the elements for mandatory abstention is unnecessary.

Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1). The doctrine of abstention is a narrow exception to the exercise of a court's federal jurisdiction. *See Artra Group, Inc. v. Salomon Bros. Holding Co., Inc. (In re Emerald Acquisition Corp.)*, 170 B.R. 632, 646 (Bankr. N.D.Ill.1994) (*citing In re Chicago, Milwaukee, St. Paul & Pacific R.R. Co.*, 6 F.3d 1184, 1189 (7th Cir.1993)); *see also Phelps Tool and Die Houston, Inc., et al. v. Welsh, et al. (In re Phelps Technologies, Inc.)*, 238 B.R. 819, 822–23 (Bankr. W.D.Mo.1999) ("[F]ederal courts generally should exercise their jurisdiction if it is properly conferred and ... abstention is the exception rather than the rule."). On the other hand, however, if abstention is warranted in a particular case, it is within the Court's discretion to do so. *See In re Titan Energy, Inc.*, 837 F.2d 325, 330 (8th Cir.1988).

As this Court noted in *In re Phelps Technologies*, because § 1334(c)(1) speaks only in general terms and does not clearly delineate any criteria to guide courts in reaching a discretionary decision to abstain, we look to the "well-developed notions of judicial abstention when applying section 1334(c)(1)." 238 B.R. at 823 (*quoting Pacific R.R.*, 6 F.3d at 1189). In determining whether abstention is appropriate under § 1334(c)(1), courts have considered a number of factors, including:

(1) The extent to which the issues involve difficult or unsettled issues of state law.

(2) The extent to which state law or other esoteric and technical issues predominate.

(3) The effect of abstention on the efficient administration of the bankruptcy proceedings.

(4) The presence of a commenced state law action in which the matter may be determined.

(5) The degree of relatedness to the main bankruptcy proceeding.

(6) The burden on the bankruptcy court's docket.

(7) The likelihood that one of the parties is forum shopping.

(8) The presence or necessity in the proceeding of non-debtor parties.

(9) The existence of a jurisdictional basis other than 28 U.S.C. § 1334.

(10) The existence of a right to a jury trial and whether the parties do or do not consent to jury trial in the bankruptcy court.

(11) The financial condition of the parties.

(12) The case's status as a "related" matter rather than a core proceeding.

*Id.* (*citing Tarkio College v. Bower (In re Tarkio College)*, 137 B.R. 34, 36 (W.D.Mo. 1992); *Republic Reader's Serv., Inc. v. Magazine Serv. Bureau, Inc. (In re Republic Reader's Serv., Inc.)*, 81 B.R. 422, 429 (Bankr.S.D.Tex.1987); *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1169 (9th Cir. 1990); 9 COLLIER ON BANKRUPTCY ¶ 5011.02[1], p. 5011–12 (15th ed. rev. 1999)). The Court "should apply these factors flexibly, for their relevance and importance will vary with the particular circumstances of each case, and no one factor is necessarily determinative." *Pacific R.R.*, 6 F.3d at 1189. Several of these factors, however, are present in this case.

### A. State Law Issues Predominate

First, the Court finds that, contrary to the Plaintiffs' contentions, this adversary

action is based predominantly on state law claims for money damages. The breach of contract, detrimental reliance, and fraud counts are all strictly state law causes of action.

On this element, the Plaintiffs focus primarily on the counts alleging that ARY violated this Court's Order confirming the Plan of Reorganization. According to the Plaintiffs, this cause of action is actually a core matter under 28 U.S.C. § 157 and is therefore within this Court's exclusive jurisdiction. Specifically, the Plaintiffs assert that the Confirmation Order was entered during the confirmation process, which is a core matter pursuant to 28 U.S.C. § 157(b)(2)(L), and that enforcement of that Order is likewise core. *See In re Texaco, Inc.,* 182 B.R. 937, 944 (Bankr. S.D.N.Y.1995) ("There can be no question that a proceeding ... to enforce and construe a confirmation order issued by this Court in this case, constitutes a proceeding 'arising in or related to a case under title 11.' ....[T]his is a core proceeding under section 157(b)(2)."); *see also In re Phelps,* 238 B.R. at 825 ("[T]he Bankruptcy Court's post confirmation jurisdiction is limited to matters concerning the implementation or execution of a confirmed plan."). The Plaintiffs further point out that it is well-settled that the Court should not abstain from exercising its jurisdiction over a core proceeding involving the interpretation and enforcement of its own confirmation order unless the party seeking abstention presents extraordinary circumstances. *See Pacific R.R.,* 6 F.3d at 1194; *In re Rusty Jones, Inc.,* 124 B.R. 774, 780–81 (Bankr.N.D.Ill.1991) ("[A]bsent extraordinary circumstances, this Court's duty under federal law requires it to determine core matters properly before it."). Moreover, as Plaintiffs suggest, "the fact that a claim in a bankruptcy matter raises issues of state, rather than federal, law does not by itself determine that it is non-core,

rather than core." *Arnold Print Works, Inc. v. Apkin (In re Arnold Print Works, Inc.),* 815 F.2d 165, 169 (1st Cir.1987). "Congress specifically provided that the 'determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.'" *Id. (quoting* 28 U.S.C. § 157(b)(3)). Rather, "[i]t is the nature of the proceeding—its relation to the basic function of the bankruptcy court—not the state or federal basis for the claim, that makes the difference." *Id.*

While the Court is mindful of the references to the Agreement in the Plan of Reorganization, the Disclosure Statement, and the Confirmation Order, the crux of this action is the interpretation of the Stock Purchase Agreement, along with determinations as to whether ARY breached the Agreement, whether the Plaintiffs detrimentally relied on the Agreement, and whether the individual Defendants made fraudulent misrepresentations in procuring the Agreement. The cause of action alleging violation of the Confirmation Order is heavily dependent upon the construction of the Stock Purchase Agreement incorporated into the Order and is, therefore, significantly intertwined with the state law contractual issues. *Accord Phelps,* 238 B.R. at 823.

Moreover, in this Court's view, the *real* action here is between the unsecured creditors, who expected to receive 60% payment of their claims as a result of the Agreement, and ARY, which allegedly breached that Agreement. The Debtor, Krigel's, is not the true third party beneficiary under the Agreement and thus is not the true party in interest here. This is particularly true since the Debtor's assets have now been sold. If the Debtor is removed from the picture, and the unsecured creditors were substituted as the Plaintiff, there could be little argument

that this matter would belong in the state courts, not in bankruptcy court.

 As in *Phelps*, although the issues presented in this case are not difficult or unsettled issues of state law, they are nonetheless legal issues best resolved by the state courts. "When the issues in an adversary proceeding are at heart state law claims rather than federal claims, it is appropriate that the bankruptcy court abstain from hearing those claims." *Id.* at 824 (*citing Eubanks v. Esenjay Petroleum Corp.*, 152 B.R. 459, 465 (E.D.La.1993)).

> Moreover, "[w]here a cause of action for monetary damages based primarily on state law can be litigated in state court without substantial delay and disruption to the orderly administration of the estate, the best forum for resolution of that action is state court, *irrespective* of whether the legal issues present unsettled questions of state law."

*Id.* (*quoting In re Republic Reader's Service, Inc.*, 81 B.R. at 426) (emphasis in original); *see also In re Titan Energy, Inc.*, 837 F.2d at 332 (where a proceeding "sounds in state law and bears a limited connection to debtor's bankruptcy case, abstention is particularly compelling").

Accordingly, because state law issues predominate this action, this factor weighs heavily in favor of abstention.

## B. *Right to Jury Trial*

Both ARY and individual Defendant Gohar Husain have demanded jury trials. Individual Defendant Abdul Razzak Yacoob states he has not been properly served as yet and therefore has not demanded a jury trial, but the Court surmises that if such service is obtained, he is likely to demand a jury trial as well.

The Supreme Court has decidedly held that the Seventh Amendment's right to a jury trial applies in bankruptcy proceedings. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 36, 109 S.Ct. 2782, 2787, 106 L.Ed.2d 26 (1989). According to the Supreme Court, the Seventh Amendment entitles a defendant to a jury trial even in core proceedings, so long as the defendant has not submitted a claim against the bankruptcy estate. *Id.; see also Phelps*, 238 B.R. at 824. In *Granfinanciera*, the Supreme Court ruled that Congress may only deny jury trials in actions at law in those cases where "public rights" are being litigated; Congress "lacks the power to strip parties contesting matters of private right [such as tort, contract, and property claims] of their constitutional right to a trial by jury." *Phelps* at 824 (*citing Granfinanciera*, 492 U.S. at 51–52, 109 S.Ct. at 2795).

The Plaintiffs assert, however, that ARY is either not entitled to a jury trial under the Seventh Amendment in the first place, or, if ARY had a right to jury trial, ARY has waived that right through its participation in this bankruptcy case.

Specifically, the Plaintiffs contend that ARY is not entitled to a jury trial as to the third-party beneficiary claims because, under 18th century English law, such claims were not "Suits at common law." [6] As the Plaintiffs assert, the Supreme Court has "consistently interpreted the phrase 'Suits at common law' to refer to 'suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized and equitable remedies were administered.'" *Granfinanciera*, 492 U.S. at 41, 109 S.Ct. at 2790 (*quoting Parsons v. Bed-*

---

**6.** The Seventh Amendment provides for the right to a trial by jury "In Suits at common law, where the value in controversy shall exceed twenty dollars." U.S. Const. amend. VII.

*ford, Breedlove & Robeson*, 28 U.S. 433, 3 Pet. 433, 447, 7 L.Ed. 732 (1830)) (emphasis in original). The Plaintiffs go on to suggest, citing persuasive secondary authority, that "it is reasonable to conclude that third party beneficiaries only had claims at equity under 18th-century English law and that because of this fact a third party beneficiary breach of contract claim does not give rise to a jury trial right under the Seventh Amendment." [7]

Even assuming that the Plaintiffs are correct that the historical framework of the caselaw indicates that third party beneficiaries may have only had claims at equity under 18th century English law, as Defendant Gohar Husain correctly points out, that is not the end of the inquiry. According to the Supreme Court:

> The form of our analysis is familiar. "First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature."

*Granfinanciera*, 492 U.S. at 42, 109 S.Ct. at 2790 (*quoting Tull v. United States*, 481 U.S. 412, 417–18, 107 S.Ct. 1831, 1835, 95 L.Ed.2d 365 (1987)). *"The second stage of this analysis is more important than the first." Id.* (emphasis added); *accord In re RDM Sports Group, Inc.*, 260 B.R. 915, 919 (Bankr.N.D.Ga.2001).

> If, on balance, these two factors indicate that a party is entitled to a jury trial under the Seventh Amendment, we must decide whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as a factfinder.

*Id.* (footnote omitted).

■ While the Committee's arguments on the nature of these types of claims in the 18th century are thought-provoking, the Court concludes that since the third party beneficiary claims in this Adversary Proceeding seek purely legal remedies,[8] they are legal in nature. As this Court has previously held, causes of action which seek monetary damages and no other relief are actions at law. *Phelps*, 238 B.R. at 822. "[W]here an action is simply for the recovery ... of a money judgment, the action is one at law." *Pernell v. Southall Realty*, 416 U.S. 363, 370, 94 S.Ct. 1723, 1727, 40 L.Ed.2d 198 (1974) (*quoting Whitehead v. Shattuck*, 138 U.S. 146, 151, 11 S.Ct. 276, 277, 34 L.Ed. 873 (1891)). And, as in *Phelps*, the third party beneficiary claims in this case are matters of

---

**7.** Noting an absence of published decisions on this issue in the 18th century, the Plaintiffs rely on two well-recognized treatises, 4 *Corbin on Contracts* § 839 (West Supp.1999), and Lawrence P. Simpson, *Contracts* at 241 (West 2nd ed.1965), to support this argument. In sum, according to these sources, third party beneficiaries had claims in courts of law in the 17th century, but such claims were treated in equity in the 19th century. Noting the absence of cases treating such claims in courts of law in the 18th century, and the presence of one case treating a third party beneficiary claim as a constructive trust, Plaintiffs assert that such claims must have been considered to be equitable claims in the 18th century.

**8.** The Court recognizes that the Committee's Complaint asserts a count which seeks a permanent injunction enjoining the Defendants from removing funds from banks located in the United States. Even if the Committee were permitted to intervene in this action, however, this count merely requests an injunction to protect its potential recovery under its legal claims and asserts no separate equitable right. *See Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 550, 110 S.Ct. 1331, 1335, 108 L.Ed.2d 504 (1990) (stating that a jury right cannot be impaired by a demand for equitable relief in aid of the legal action).

"private rights," entitling the Defendants to a jury trial. *See Phelps* at 824.

The Plaintiffs next assert that even if ARY was entitled to a jury trial, ARY has waived that right through its participation in this bankruptcy case. Pointing to *Granfinanciera*'s ruling that the filing of a proof of claim constitutes a waiver of the right to a jury trial, *see also Langenkamp v. Culp,* 498 U.S. 42, 44, 111 S.Ct. 330, 331, 112 L.Ed.2d 343 (1990) ("[A] creditor's right to a jury trial on a bankruptcy trustee's preference claim depends upon whether the creditor has submitted a claim against the estate."), Plaintiffs contend that ARY's participation and influence in the bankruptcy proceeding rises to the level which should subject it to this Court's equitable jurisdiction, even though ARY has not filed a proof of claim.

Assuming for the sake of argument that ARY's level of involvement in the bankruptcy case constitutes a waiver of its right to a jury trial (an argument the Court does not concur with at this point),[9] the Plaintiffs still have not addressed the issue of the individual Defendants' right to jury trial.

It seems clear to this Court that the individual Defendants are entitled to a jury trial on the fraudulent misrepresentation count. "Whether a lawsuit based on fraud would have been at law or equity under the English system depended primarily on the remedy requested. Damages are a legal remedy, and a suit to recover damages based on fraud is an action at law, not a suit in equity." *In re Bandy,* 237 B.R. 661, 664 (Bankr. E.D.Tenn.1999). The Plaintiffs have not disputed this.

In addition, there has been no allegation that the individual Defendants have waived their right to jury trial. Defendant Husain has demanded a jury trial and has stated that he does not intend to waive that right or to consent to a jury trial by this Court.

■■■ Having determined that the individual Defendants are entitled to a jury trial, then even if ARY is not entitled to a jury trial because the Plaintiffs' claims against it are equitable in nature, "[w]hen legal and equitable claims are joined in the same action, 'the right to jury trial on the legal claim, including all issues common to both claims, remains intact.'" *Lytle v. Household Mfg., Inc.,* 494 U.S. 545, 550, 110 S.Ct. 1331, 1335, 108 L.Ed.2d 504 (1990); *accord In re RDM Sports Group,* 260 B.R. at 919–20 ("That an equitable claim has been joined with three legal claims does not justify a denial of [a party's] right to a jury trial."). "In the Federal courts this (jury) right cannot be dispensed with, except by the assent of the parties entitled to it, nor can it be impaired by any blending with a claim, properly cognizable at law, of a demand for equitable relief in aid of the legal action or during its pendency." *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 510, 79 S.Ct. 948, 957, 3 L.Ed.2d 988 (1959) (*quoting Scott v. Neely,* 140 U.S. 106, 109–10, 11 S.Ct. 712, 714, 35 L.Ed. 358 (1891)). Thus, as Defendant Husain suggests, since he and Defendant Abdul Razzak Yacoob are entitled to a jury trial on the fraudulent misrepresentation claim, "it is unnecessary to decide whether the [Plaintiffs'] other claims are also properly triable to a jury." *Ross v. Bernhard,* 396 U.S. 531, 542–43, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970).

9. "[A]s the right of jury trial is fundamental, courts indulge every reasonable presumption against waiver." *In re RDM Sports Group,*

260 B.R. at 924 (*quoting Aetna Ins. Co. v. Kennedy,* 301 U.S. 389, 393, 57 S.Ct. 809, 81 L.Ed. 1177 (1937)).

Furthermore, the individual Defendants in this case are clearly entitled to a jury trial and, as was the case in *Phelps*, if this Court refused to abstain as to the claims against ARY, we would be confronted with the very awkward situation in which two of the Defendants would be entitled to a jury trial and the third Defendant would not be, "a situation that would be fertile grounds for error and inconsistent results." *Id.* at 825.

Consequently, even assuming ARY is not entitled to a jury trial due to waiver or otherwise, the Court concludes that the individual Defendants undoubtedly are so entitled, and so the Court will allow the parties to litigate all issues before a jury in a state court. *Id.*

### C. *The Presence of Non–Debtor Parties will be Required*

Third, this case will undoubtedly require the presence of non-debtor parties in this action. No one disputes that the Stock Purchase Agreement was an agreement between Scott Krigel's Revocable Trust and ARY and that they are the true parties to that contract.[10] And, as the Defendants point out, Scott Krigel stands to gain a substantial recovery in the event it is determined that ARY breached the contract or that the individual Defendants committed fraud because he would then be entitled to damages on the consulting and noncompete elements of the Agreement. Unquestionably, Scott Krigel, both personally and as Trustee of the Revocable Trust, will be required to actively participate in this action. This factor also weighs in favor of abstention.

### D. *No Forum Shopping*

Fourth, the Court does not believe the Defendants are forum shopping. If anything, it is the Debtor that is engaged in forum shopping, and it has all but conceded so by suggesting that since the state court might not recognize the Committee as a representative of the individual creditors and might not certify the creditors as a class, the bankruptcy court may be the only forum where the unsecured creditors can effectively and efficiently sue for damages. In addition, as this Court said in *Phelps*, defendants do not engage in forum shopping by "assert[ing] their right to a jury trial in a forum having proper jurisdiction over them." *Id.* at 826. "In fact, that seems to be a perfectly legitimate defense strategy." *Id.*

Again, the Court believes this case is, at its foundation, a state-law breach of contract and fraud action between Scott Krigel as Trustee of the Revocable Trust and ARY. Even the Debtor is not the true third party beneficiary to the Agreement—it is the unsecured creditors who can possibly claim damages as third party beneficiaries of the Agreement. As such, this case properly belongs in the state court.

### E. *Efficient Administration of the Estate*

Arguably, having this case removed to state court will be less efficient than trying the case before this Court. However, because the Court believes that at least two of the Defendants are entitled to a jury trial and the Court does not anticipate a waiver of that right, if this Court did not abstain, the jury trial would have to be conducted in the District Court in any event. Either way, the Defendants' asser-

---

**10.** In fact, as discussed above, the Debtor is not even really the true third party beneficiary to the contract. If the true third party beneficiaries, the unsecured creditors, were substi- tuted as the Plaintiff, the Debtor would not be a party at all and the case would then involve *only* non-debtors.

tion of their right to jury trial will potentially result in a less efficient administration of the bankruptcy estate. Obviously, however, considerations of efficiency cannot override those Defendants' right to a jury trial. Abstention, in this Court's view, is no less efficient than taking the case to the District Court, which is the only other alternative if the Defendants continue to assert their right to jury trial.

In addition, since the Debtor's assets have been sold and the Debtor is, in effect, being liquidated, the resolution of this lawsuit would not have any effect on the outcome of the bankruptcy case itself and, because there is no possibility of reorganization, any potential delay caused by abstention would not adversely affect a reorganization attempt.

As a result, the Court finds that if abstention results in some amount of inefficiency, it would not adversely affect the administration of the bankruptcy case itself.

### F. Other Factors

The Court concedes that some of the factors enumerated in *Phelps* tend to weigh in favor of denying the motion for abstention. For instance, there is currently no pending state law proceeding in which the Plaintiffs can pursue their claims, and that fact weighs in favor of denying the abstention motion.[11]

Also, because the parties have diversity of citizenship, they likely have a jurisdictional basis, other than 28 U.S.C. § 1334, for their presence in the federal courts, but again, since this Court cannot conduct the jury trial to which the Defendants are

entitled, the matter would have to be removed to the District Court in any event.

Additionally, the financial condition of the parties is a factor tending to weigh in favor of granting the motion because, obviously, the Debtor has no financial resources with which to pursue a state court action. And, the Court recognizes the difficulty to the seventy or so creditors scattered around the country in attempting to pursue their claims individually or as a group (if somehow possible) in state court. However, while the Court finds that situation regrettable, that does not change the fact that state law issues predominate this action. This action, fortunately or unfortunately, belongs in state court.

Finally, the Court feels it appropriate to briefly address the core/non-core issue which the parties have hotly contested in connection with this and other motions. To summarize, the Plaintiffs assert that this Adversary Proceeding is core because it involves an alleged violation of this Court's Order approving the Disclosure Statement and confirming the Plan of Reorganization. The Court declines to actually decide that issue herein because, since the weight of the factors discussed above tips in favor of abstention, the issue of core/non-core is not absolutely critical. However, if called upon to decide this issue today, the Court would find that, on balance, this action does not appear to be a core proceeding. As discussed above, the Court believes that this Adversary Proceeding is based, at its foundation, on the interpretation of the Stock Purchase Agreement and any breach thereof, clearly state court questions that would be non-core. In any event, because the weight of

---

11. The Defendants assert that the declaratory judgment action filed by ARY against the Scott W. Krigel Revocable Trust and Scott Krigel personally in the Johnson County, Kansas District Court is such an action and that the creditors (and perhaps even the Committee itself) could pursue its claims in that action. Without going into the merits, the Court finds this assertion somewhat questionable.

the factors discussed herein tips in favor of abstention, the Court finds that the core/non-core issue is not a critical factor on the issue of abstention.

CONCLUSION

The Court has carefully considered the other factors and arguments raised by the parties. In sum, as in *Phelps*, while the Court recognizes that abstention is a narrow exception to the exercise of federal jurisdiction, the Court believes that "the better part of discretion counsels abstention in this case." *Id.* at 826. However, the Court will delay the effective date of its Order herein to allow the proper parties to seek appropriate injunctive relief in the state courts.

Therefore, for the foregoing reasons, it is

ORDERED that Defendant ARY Jewelers, L.L.C.'s Motion for Abstention be and is hereby GRANTED pursuant to 28 U.S.C. § 1334(c)(1). It is

FURTHER ORDERED that this Order shall be effective on June 19, 2001, and the temporary restraining order issued by this Court shall terminate on that date.

So ORDERED.